**Michael L. DAVIS, Appellant (Defendant),**

v.

**STATE of Indiana, Appellee (Plaintiff).**

No. 34S00–0009–CR–527.

Supreme Court of Indiana.

June 25, 2002.

Charles H. Scruggs, Kokomo, Indiana, Teresa D. Harper, Bloomington, Indiana, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Robin Hodapp–Gillman, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

SHEPARD, Chief Justice.

Michael L. Davis appeals his convictions for attempted murder, aggravated battery, and burglary. He presents the following issues:

I.    Whether the State presented sufficient evidence to support the burglary conviction;

II.   Whether Davis' convictions for aggravated battery, burglary, and attempted murder violate Indiana's Double Jeopardy Clause;

III.  Whether Davis is entitled to a mistrial because two jurors saw him in restraints and one juror overheard

a rumor that Davis' family had called in a bomb threat; and

IV. Whether the trial court erred in declining to let Davis withdraw his plea of guilty to the habitual offender charge.

### Facts & Procedural History

The evidence at trial revealed that on January 17, 2000, Davis and his accomplice William Jenks plotted to rob David Bentzler, Sr. When the two arrived at Bentzler's home, Davis tried to open the lock with a master key. Bentzler was aware of their arrival and had armed himself with a gun. Intending to scare Davis and Jenks away, Bentzler opened the door slightly, but Davis immediately forced the door open, pinning Bentzler to the wall. Davis and Bentzler struggled for control of the gun. Forced back farther into the room, Bentzler lost hold of his weapon, and Davis struck him repeatedly over the head with the gun.

Davis then began to strangle Bentzler, cutting off his airway. Davis ordered Jenks to get a knife from the kitchen. Jenks brought Davis the knife, and Davis stabbed Bentzler in the neck. Fortunately, the knife blade broke. Bentzler attempted to escape, but Davis again grappled with Bentzler and choked him. Davis asked Jenks to get another knife, but Jenks convinced him that the police were coming. The two men left the home and escaped in Davis' truck.

Bentzler suffered several injuries during the attack, including numerous lacerations to his head as a result of blows from the gun and a serious knife cut to his neck. He also suffered internal bruising to his throat, cuts to his hands, and permanent scarring.

A jury found Davis guilty of all charges. Davis admitted an habitual offender charge. The court sentenced him to fifty years for attempted murder, adding thirty years for his habitual offender status, and a consecutive sentence of thirty years for burglary. It imposed a concurrent twenty years for aggravated battery.

### I. Sufficiency of the Burglary Evidence

■ Davis asserts that because Bentzler opened the door, there was insufficient evidence to support the breaking element of burglary. The State responds by arguing that a breaking occurred when Davis forced the door open.

■ Burglary occurs when a person "breaks and enters the building or structure of another person, with intent to commit a felony in it." Ind.Code Ann. § 35–43–2–1 (West 1998). Using even the slightest force to gain unauthorized entry satisfies the breaking element of the crime. *Trice v. State,* 490 N.E.2d 757 (Ind.1986). For example, opening an unlocked door or pushing a door that is slightly ajar constitutes a breaking. *Utley v. State,* 589 N.E.2d 232 (Ind.1992), *cert. denied,* 506 U.S. 1058, 113 S.Ct. 991, 122 L.Ed.2d 142 (1993).

The State supported Davis' burglary charge with the testimony of both Bentzler, the burglary victim, and Jenks, Davis' accomplice. Bentzler testified:

I'm going to open up the door a little bit 'cause they're going to get in somehow or another and I was going to hold my gun out like this, which I did, and let them know that I've got a gun.... As soon as I opened the door, I didn't even get that full sentence out. Before I even got probably half that sentence out, the door come smacking into my head and knocked me back to my wall and [Davis] had me pinned up to the wall and was struggling to get the gun out of my hand.

(R. at 271–72.) In addition, Jenks testified that a struggle ensued as the door was cracked open. (R. at 449–50.) This evidence allowed a reasonable inference that Davis used force to gain entry. Consequently, the evidence was sufficient to support a burglary conviction.

## II. Double Jeopardy

■ Davis next claims that his convictions violate Indiana's Double Jeopardy Clause. Davis contends that his convictions for attempted murder, aggravated battery and burglary as a class A felony arise from the same factual evidence: the attack with a knife. He requests that the aggravated battery conviction be vacated and the burglary conviction be reduced to a class C felony.[1]

Article 1, section 14 provides that "[n]o person shall be put in jeopardy twice for the same offense." Double jeopardy analysis involves the dual inquiries of the "statutory elements test" and the "actual evidence test," as generally described in *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999). Davis does not argue the statutory elements test, so we therefore examine the actual evidence used in this case.

■ The actual evidence test prohibits multiple convictions if there is "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Richardson*, 717 N.E.2d at 53. We have elaborated on this test in recent opinions.

In *Spivey v. State*, we clarified that the actual evidence test "is *not* violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, *but not all*, of the essential elements of a second offense." 761 N.E.2d 831, 833 (Ind.2002) (emphasis added).

The evidence presented at trial established that Davis forced his way into Bentzler's home and struck him several times over the head. While choking him, Davis then cut Bentzler with a knife. After the knife blade broke, Bentzler attempted an escape, but Davis again struck and choked him.

The court directed the jury's application of the evidence on attempted murder and aggravated battery, drawing attention to specific evidentiary facts.[2] The attempted murder instructions read:

> To convict the defendant of Attempted Murder as charged in Count I, the State must have proved [sic] each of the following elements beyond a reasonable doubt:
>
> The defendant:

---

1. We reject the State's assertion that concurrent sentences vitiate a double jeopardy claim. The State relies on a footnote in *Roop v. State*, 730 N.E.2d 1267, 1270 n. 2 (Ind. 2000), which states:

> Roop's convictions for child molesting, neglect of a dependent, and battery appear to raise a claim under the Indiana Double Jeopardy Clause.... [W]e note that raising the issue would likely have had no practical effect because the sentences were ordered served concurrently.

The comment in *Roop* was intended solely as an observation that the duration of Roop's sentence would have been no different, not as a statement that concurrent sentences moot a double jeopardy claim.

2. The court also read the State's formal charging information. The attempted murder information alleged that Davis "knowingly or intentionally attempt[ed] to kill ... David Bentzler ... [by] cut[ting] David Bentzler's throat with a knife." (R. at 121.) Likewise, the information charging him with aggravated battery stated that Davis "inflict[ed] injury on ... Bentzler ... which created a substantial risk of death or caused serious disfigurement, to-wit: did cut the throat of David Bentzler, Sr., with a knife." (R. at 123.)

1. while acting with the specific intent to kill David Bentzler, Sr.;

2. did cut David Bentzler, Sr.'s throat with a knife;

3. which was conduct constituting a substantial step toward the commission of the intended crime of murder.

(R. at 125.)

The aggravated battery instruction said:

To convict the defendant of Aggravated Batter[y] as charged in Count III, the State must have proved [sic] each of the following elements:

The defendant:

1. knowingly or intentionally;

2. inflicted injury upon David Bentzler Sr., to-wit: cut David Bentzler, Sr. with a knife;

3. which created a substantial risk of death, or caused serious permanent disfigurement, or protracted loss or impairment of the function of a bodily member or organ.

(R. at 130.)

Based upon our review of the evidence, charging information and jury instructions, the conviction for aggravated battery arose from the same evidence that gave rise to the conviction for attempted murder. Therefore, a reasonable possibility exists that the jury used the evidence proving the elements of attempted murder to also establish the elements of aggravated battery. Because both convictions cannot stand under the Indiana Double Jeopardy Clause, we vacate the conviction for aggravated battery. *See also Spry v. State,* 720

N.E.2d 1167, 1170 (Ind.Ct.App.1999), *transfer denied.*

On the other hand, the same analysis fails regarding Davis' convictions for burglary as a class A felony and attempted murder. Although each charge utilizes the same factual event, Davis' stabbing of Bentzler, a burglary conviction requires additional evidentiary facts establishing the essential elements of (1) breaking and entering (2) the building or structure of another (3) with the intent to commit a felony in it. Per our decision in *Spivey,* we find no double jeopardy violation. *See also Swaynie v. State,* 762 N.E.2d 112, 115 (Ind.2002).

Nevertheless, "we have long adhered to a series of rules of statutory construction and common law that are often described as double jeopardy, but are not governed by the constitutional test set forth in *Richardson.*" *Pierce v. State,* 761 N.E.2d 826, 830 (Ind.2002). Among these is the doctrine that where a single act forms the basis of both a class A felony burglary conviction and also the act element of an attempted murder conviction, the two cannot stand. *King v. State,* 517 N.E.2d 383, 385 (Ind.1988); *Bevill v. State,* 472 N.E.2d 1247, 1254 (Ind.1985). Accordingly, the burglary conviction as a class A felony must be reduced.

Davis seeks reduction of his conviction to a class C felony.[3] In response, the State concedes that Davis' conviction for burglary as a class A felony is error, but urges us to only reduce the conviction to a class B felony.

In *Johnson v. State,* 749 N.E.2d 1103 (Ind.2001), we recently confronted this

---

**3.** Class C burglary occurs when "[a] person ... breaks and enters the building or structure of another person, with intent to commit a felony in it." Ind.Code § 35–43–2–1. Burglary is a class B felony if it is committed "while armed with a deadly weapon" or *if the building is a dwelling.* Ind.Code § 35–43–2–1(1) (emphasis added). Burglary becomes a class A felony if it results in bodily injury or serious bodily injury to someone other than the defendant. Ind.Code § 35–43–2–1(2).

same issue. In that case, the defendant was convicted of murder and burglary as a class A felony, and we found that the same evidence was erroneously used to support both convictions. *Id.* Because the evidence presented at trial proved that the defendant broke and entered the victim's dwelling, we reduced the conviction to a class B felony. *Id.; see also Curry v. State,* 740 N.E.2d 162, 165–67 (Ind.Ct.App. 2000) (reducing burglary conviction from class A to class B felony because the same evidence was used to convict the defendant of attempted rape and battery).

The same analysis is applicable here. The evidence presented at trial clearly proves that Davis broke and entered Bentzler's dwelling. Therefore, we reduce Davis' burglary conviction to a class B felony.

### III. Motion for Mistrial

▮▮▮▮▮ Davis next contends that the court erred in denying his motion for mistrial. Davis alleges that his constitutional rights were violated because some members of the jury not only saw him in handcuffs and shackles but also overheard rumors that Davis' family had made bomb threats to the courthouse.[4] The State responds by arguing that Davis either waived these issues[5] or cannot demonstrate actual harm as a result of the alleged errors.

▮▮▮▮▮ The granting of a mistrial lies within the sound discretion of the trial court, and we reverse only when an abuse of discretion is clearly shown. *Ramos v. State,* 433 N.E.2d 757 (Ind.1982). The general rule precludes presenting a defendant to the jury in handcuffs or shackles, but a court may need to do so in certain exceptional circumstances when restraint is necessary to prevent the escape of the prisoner, to protect those in the courtroom, or to maintain order. *Smith v. State,* 475 N.E.2d 1139, 1144 (Ind.1985), *rev'd on other grounds,* 547 N.E.2d 817 (Ind.1989). Moreover, it is not an abuse of discretion for a trial court to deny a motion for mistrial because a juror has seen a defendant in handcuffs unless the defendant demonstrates actual harm. *Jenkins v. State,* 492 N.E.2d 666 (Ind.1986).

One juror testified that he saw Davis in restraints before trial. (R. at 919–20.) Prior to jury selection, the Howard County courthouse received a bomb threat, forcing a quick evacuation. (R. at 223.) In the presence of potential jurors, shackled and handcuffed inmates (including Davis) were escorted outside to be returned to jail. (*Id.*) Securing prisoners during such an emergency was a reasonable response to a

---

4. Davis also asserts that the subsequent questioning of three jurors about their viewing of the defendant in restraints and their knowledge of the bomb threat violated Indiana Rule of Evidence 606(b). (Appellant's Br. at 18.) It did not. Rule 606(b) permits a juror to testify concerning "whether extraneous prejudicial information was improperly brought to the jury's attention" or "whether any outside influence was improperly brought to bear upon any juror." Both defense counsel and the prosecutor asked proper questions of the jurors, and each juror emphatically denied that viewing the defendant in restraints or hearing rumors of the bomb threat had any bearing on their verdict. (R. at 914–24.)

5. We will address these issues on the merits, although there is considerable room to argue that Davis has waived them. The record indicates that the court was evacuated as a result of a bomb threat, and Davis was escorted outside with other inmates in the presence of potential jurors. (R. at 223.) After discussing the issue with Davis, Judge Murray noted that Davis agreed to waive any matter pertaining to mistrial. (R. at 226.) Nevertheless, the record is not explicit with regard to precisely what Davis waived, and does not state whether the potential jurors viewed Davis in restraints or whether the source of the bomb threat was discussed.

potentially critical situation. Moreover, the juror testified that viewing Davis in restraints had no bearing on his verdict. (R. at 920.)

A second juror testified she saw Davis in handcuffs "at some point after we were into the trial," but that she simply thought Davis' being in restraints was "just protocol." (R. at 922–23.) Exactly where this occurred is unknown, but we have held, for example, that "reasonable jurors could expect [defendants] to be in police custody while in the hallway of the courthouse." *Jenkins*, 492 N.E.2d at 669 (citing *Johnson v. State*, 267 Ind. 256, 369 N.E.2d 623 (1977), *cert. denied*, 436 U.S. 948, 98 S.Ct. 2855, 56 L.Ed.2d 791 (1978)). Moreover, "[p]otential jurors would reasonably expect that anyone in police custody would be restrained, regardless of the precise nature of the charge against the accused." *Malott v. State*, 485 N.E.2d 879, 882 (Ind. 1985), *abrogated on separate grounds, Richardson v. State*, 717 N.E.2d 32 (Ind. 1999). Because Davis has not demonstrated actual harm as a result of the juror seeing him momentarily in handcuffs, the trial court did not abuse its discretion in denying the motion for a mistrial.

Finally, Davis presented the testimony of a third juror who stated:

> At some point in time, and I'm not sure which day, in passing by someone in a conversation, I wasn't in the conversation, but I just heard someone say possibly [the bomb threat] was handled by the family and that's what I heard. I have no idea where I heard it from.

(R. at 916.) The juror further testified that hearing this had no effect on her decision in the case. (R. at 917.) As with the previous allegations of error, Davis can demonstrate no actual harm resulting from the juror overhearing the rumor. The trial court did not abuse its discretion.

## IV. Withdrawal of Davis' Guilty Plea

Finally, Davis claims the trial court erred in not allowing him to withdraw his guilty plea to the habitual offender charge. Davis asserts that because he was mentally exhausted as a result of the long day of trial that preceded his plea, it was unfair and unjust to prevent him from changing his mind later.

Indiana Code § 35–35–1–4 provides the standard to apply when a defendant pleads guilty and then requests to withdraw the plea:

> After entry of a plea of guilty ... but before imposition of sentence, the court *may* allow the defendant by motion to withdraw his plea ... for any fair and just reason unless the state has been substantially prejudiced by reliance upon the defendant's plea.... The ruling of the court on the motion shall be reviewable on appeal only for an abuse of discretion. However, the court *shall* allow the defendant to withdraw his plea ... whenever the defendant proves that withdrawal of the plea is necessary to correct a manifest injustice.

Ind.Code Ann. § 35–35–1–4(b) (West 1998) (emphasis added).

Trial court rulings on such requests are presumptively valid, and parties appealing an adverse decision must prove that a court has abused its discretion. *Weatherford v. State*, 697 N.E.2d 32, 34 (Ind.1998). A trial court abuses its discretion only "when the failure of the trial court to grant the motion would result in ... a manifest injustice." *Id.*

Before sentencing, Davis moved to withdraw his plea. After hearing evidence on Davis' motion to withdraw his guilty plea, the court stated:

> The Defendant does have [the] burden to show that the plea of true or plea of guilty to this charge was not made free-

ly and voluntarily or otherwise without full understanding of the advisement of rights or without factual basis. (R. at 945–46.) This was an incorrect standard for the trial court to apply. Instead, Davis was required to demonstrate (1) a fair and just reason for withdrawal of the guilty plea and (2) no reliance by the State that resulted in substantial prejudice.

Nevertheless, Davis does not overcome the presumption that the trial court correctly denied the withdrawal of his guilty plea. Davis asserts that he was tired, confused, and upset because the jury had recently found him guilty of the charged offenses. This is not enough to show that the trial court abused its discretion in denying the motion to withdraw his guilty plea. Although Davis vacillated between pleading guilty and contesting the charge, (R. at 893, 896), the court questioned Davis thoroughly on his understanding of the plea, (R. at 893–909).

Judge Murray asked Davis whether he suffered from mental or emotional disabilities that interfered with his ability to understand the plea. (R. at 895.) Davis answered, "no." (*Id.*) She asked whether he understood the rights he was forfeiting regarding trial and appeal. (R. at 895–903.) She asked whether he understood that he could receive up to thirty years' incarceration for the guilty plea. (R. at 903–04.) She asked whether he had con-

sulted with his attorney on the matter. (R. at 904.) To each of these questions, Davis answered yes.[6]

While Davis could understandably have been disappointed by the jury's findings, the record does not demonstrate that permitting withdrawal of the plea was necessary to prevent a manifest injustice.

### Conclusion

We remand this cause to the trial court with instructions to vacate Davis' conviction for battery and reduce the conviction for burglary to a class B felony. In all other respects, the judgment of the trial court is affirmed.

SULLIVAN, BOEHM, and RUCKER, JJ., concur.

DICKSON, J., concurs in result without separate opinion.

---

6. We find the following record excerpts particularly relevant:

Davis: Your Honor, I'm sorry. I want to retract my last statement. I'll just plead guilty. It's just going to happen anyway so I'm guilty of it.
Court: Mr. Davis, I want you to be absolutely sure—
Davis: Yeah.
. . .
Court: Sir, you understand that as a[n] habitual felony offender the court enters a judgment of conviction thereby, that the Court could sentence you to an additional term of up to 30 years incarceration?
Davis: [Following a conference between Davis and his counsel.] Yes, Your Honor.
. . .
Court: Do you feel that the plea of guilty you're offering now is your own free choice and decision?
Davis: Yes.
Court: And is it still your intention to plead guilty?
Davis: Yes.
(R. at 896–97, 903–04, 905.)