Kyle WILLIAMS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 79A05–0707–CR–408.

Court of Appeals of Indiana.

July 22, 2008.

Transfer Denied Sept. 23, 2008.

Daniel J. Moore, Laszynski & Moore, Lafayette, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Jessica A. Meek, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

DARDEN, Judge.

*STATEMENT OF THE CASE*

Kyle Williams appeals his convictions and sentences after a jury found him guilty of five offenses: one count of attempted rape, as a class B felony; two counts of criminal confinement, one as a class C felony and one as a class D felony;

and two counts of battery, one as a class C felony and one as a class A misdemeanor.[1]

We affirm in part, reverse in part, and remand with instructions.

## ISSUES

1. Whether the Double Jeopardy Clause of Indiana's Constitution bars Williams' convictions and sentencing on three of the offenses.

2. Whether the sentences imposed for four of the offenses violate the statutory limitation for consecutive sentences in Indiana Code section 35–50–2–3.

## FACTS

Sometime after 8:30 p.m. on November 29, 2005, K.H. arrived at the parking lot behind a sorority house on the Purdue University campus. She called Megan Greene to come let her in the house's back door to the parking lot. Several minutes later, Greene reached the parking lot outside the back door, but did not see K.H. She called out K.H.'s name, and then called K.H.'s cell phone. Greene heard the phone ringing and went toward the sound. She saw "a body on the ground" partly under a parked car, and a man in a black coat "squatted down right next to" the body. (Tr. 83, 95). The man, later identified as Williams, then stood up and walked away. The body was that of K.H., who was unconscious, with "blood all over her face," her pants unzipped, and "her pants and underwear . . . pulled down" to her knees. (Tr. 102). Green called 9–1–1, and police responded immediately. K.H. suffered multiple injuries: a concussion, a nasal bone fracture, the loss of one tooth, a gash where another tooth pierced her lip— requiring stitches both inside and outside

her lip, a bruised jaw, cuts to her hand, broken blood vessels in her eyes "from being strangled," and "a lot of . . . body aches and pains." (Tr. 69). K.H. testified that when she called Greene, she was approximately twenty feet from the back door of the sorority house, and that she remembered nothing after that until she "woke up on the ground . . . right before they loaded [her] in the ambulance." (Tr. 62, 78).

Approximately ninety minutes after the attack on K.H., another Purdue student, J.R., was walking toward her dormitory when she heard "a rush of footsteps" behind her. (Tr. 120). A large man "grabbed his arms . . . around [her]," put "his shoulder . . . into the small of [her] back," and tackled her to the ground. (Tr. 121). The man turned her over, "straddled directly over [her] midsection," and struck her face repeatedly with his fist. *Id.* A bicyclist heard screams, followed the sounds, and could see from a distance a man "on top" of "a woman on the ground" and "beating up the person" underneath. (Tr. 135, 137). When the bicyclist arrived at the scene, the man jumped up and ran away; the bicyclist called 9–1–1. The police arrived, finding J.R. with "a lot of blood on her face" and a chipped front tooth. (Tr. 144). J.R. provided a description of her attacker—which was broadcast by the police. J.R. was taken to the hospital, where she was admitted; photographs were taken of her injuries.

Based upon information broadcast by law enforcement, an officer observed a person matching the description of the man who had attacked J.R. The officer further observed the man, later identified as Williams, begin to follow a lone woman. Fearing that another assault might ensue,

---

1. Williams does not challenge the sentence imposed after he pleaded guilty to one count of burglary, as a class B felony.

the officer stopped Williams. Williams had visible blood on the sleeve of his jacket and on his hands.

Williams was arrested, and on December 9, 2005, the State charged Williams with the following: Count I, attempted rape resulting in serious bodily injury, a class A felony; Count II, criminal confinement resulting in serious bodily injury, a class B felony; Count III, battery resulting in serious bodily injury, a class C felony, involving the first victim, K.H.; Count IV, attempted rape, a class B felony; Count V, criminal confinement, a class D felony; and Count VI, battery, a class A misdemeanor, involving the second victim, J.R.

A jury trial was held on April 24–26, 2007, involving both victims.[2] At trial, Williams admitted that he had committed the offenses of battery against K.H. and J.R. Evidence of the foregoing facts was heard. The jury viewed photographs of the injuries sustained by K.H. and J.R., and videotapes of Williams' statements during several interviews by law enforcement. The trial court's instructions to the jury also included instructions about lesser included offenses. As to K.H., the jury found Williams guilty of attempted rape, as a class B felony; criminal confinement resulting in bodily injury, as a class C felony; battery resulting in serious bodily injury, as a class C felony. As to J.R., the jury found Williams guilty of criminal confinement, as a class D felony; and battery

resulting in bodily injury, as a class A misdemeanor.[3]

The sentencing hearing was held on June 28, 2007.[4] Regarding the crimes against K.H., the trial court sentenced Williams to a term of sixteen years for attempted rape, as a class B felony; six years for criminal confinement resulting in bodily injury, as a class C felony; and six years for the battery resulting in serious bodily injury, as a class C felony. As to the crimes against J.R., the trial court sentenced Williams to two years for criminal confinement, as a class D felony, and one year for battery resulting in bodily injury, as a class A misdemeanor. The trial court ordered that Williams serve all the sentences consecutively, for a total of thirty-one years.

### DECISION

#### 1. Double Jeopardy

 Williams argues that his "conviction and sentencing" for the three offenses against K.H. and the two offenses against J.R. "violate[ ] the double jeopardy provisions" of the Indiana Constitution. Williams' Br. at 4. Specifically, he asserts that application of the "actual evidence test" requires that "the lesser convictions be vacated" because "the various convictions with respect to each victim are supported by the same evidentiary facts." Id. at 5, 6.

 The Indiana Constitution provides that "[n]o person shall be put in jeopardy

---

2. On December 9, 2005, the State had also charged Williams with two counts of theft, as class D felonies, and with burglary, as a class B felony; one theft was alleged to have taken place on November 29, 2005, and the other offenses were alleged to have taken place on November 10, 2005. However, these charges were severed from those alleging the attacks on K.H. and J.R. and not presented at this trial.

3. The jury found Williams not guilty of attempted rape of J.R., as a class B felony.

4. At the sentencing hearing, Williams pleaded guilty to one count of burglary, as a class B felony, which he is not challenging on appeal.

twice for the same offense." IND. CONST. art. 1, sec. 14. Double jeopardy analysis involves the dual inquiries of the statutory elements test and the actual evidence test. *Davis v. State*, 770 N.E.2d 319, 323 (Ind.2002) (citing *Richardson v. State*, 717 N.E.2d 32 (Ind.1999)). Williams' appeal argues a violation pursuant to the actual evidence test. Accordingly, we focus on the analysis therefor.

■■■ The actual evidence test prohibits multiple convictions if there is "a reasonable probability that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id.* (quoting *Richardson*, 717 N.E.2d at 53). In *Spivey v. State*, 761 N.E.2d 831 (Ind.2002), our Supreme Court clarified that the actual evidence test "is *not* violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, *but not all*, of the essential elements of a second offense." *Id.* at 833 (emphasis added). In applying the actual evidence test, we consider the essential elements of each of the challenged crimes and evaluate the evidence from a jury's perspective, considering factors that may have guided the jury's determination—such as the jury instructions, arguments of counsel, and the charging information. *Id.* at 832, *Davis* 770 N.E.2d at 319.

a. *Offenses against K.H.*

Williams was convicted of the lesser included offense of attempted rape of K.H., as a class B felony offense. Therefore, the State was required to prove that with the intent to commit rape, Williams knowingly or intentionally engaged in conduct constituting a substantial step toward the commission of rape. *See* Ind.Code §§ 35–41–5–1, 35–42–4–1. The charging informa-

tion, included in the trial court's instructions to the jury, alleged that Williams "engaged in conduct that constituted a substantial step toward the commission" of attempted rape when he

> approached [K.H.] from behind; ... attacked [K.H.] and knocked her to the ground; ... struck [K.H.] one or more times and/or choked [K.H.]; ... pulled [K.H.'s] pants and underwear down to her knees before fleeing; resulting in serious bodily injury to ... [K.H.].

(App.38). The trial court further instructed the jury that to convict Williams

> of attempted rape, as charged in Count I, the State must have proved each of the following elements beyond a reasonable doubt:
>
> The Defendant
>
> 1. acting with the intent to commit the rape, that is,
>
> (a) to have sexual intercourse with [K.H.], a person of the opposite sex,
>
> (b) when [K.H.] is compelled by force,
>
> 2. knowingly or intentionally
>
> 3. approached [K.H.] from behind and
>
> (a) attacked and knocked her to the ground and/or
>
> (b) struck her one or more times and/or choked her and/or
>
> (c) pulled [K.H.]'s pants and underwear down to her knees before fleeing
>
> 4. which was conduct constituting a substantial step toward the commission of the crime of rape.

\* \* \*

> If the State did prove each of these elements beyond a reasonable doubt, you may find the Defendant guilty of attempted rape, a Class B felony, charged in Count I.
>
> If the State further proved that the attempted rape resulted in serious bodi-

ly injury to [K.H.], you may find the defendant guilty of attempted rape, a Class A felony, as charged in Count I. (App.41).[5]

Williams was convicted of the lesser included offense of criminal confinement, as a class C felony, having originally been charged as a class B felony. Therefore, the State was required to prove that Williams knowingly or intentionally confined K.H. without her consent, and that the confinement resulted in bodily injury. *See* I.C. § 35–42–3–3(b)(1). The charging information, provided in an instruction to the jury, alleged that Williams committed the crime of confinement when he "did knowingly or intentionally confine another person, ... [K.H.], without her consent, resulting in serious bodily injury" to her. (App.38). The trial court instructed the jury that to convict Williams of criminal confinement,

the State must have proved each of the following beyond a reasonable doubt:
1. The Defendant
2. knowingly or intentionally
3. confined [K.H.] without her consent.

(App.44). The instruction further informed the jury as to the different levels of criminal confinement, which was repeated in the following instruction:

A person who knowingly or intentionally confines another person without the other person's consent, commits criminal confinement, a Class D felony. The offense is a Class C felony if it results in bodily injury. The offense is a class B

felony if it results in serious bodily injury to another person. (App.40).

Finally, Williams was also convicted of the lesser included offense of battery, as a class C felony, having been originally charged as a class B felony. Therefore, the State was required to prove that Williams knowingly or intentionally touched K.H. in a rude, insolent, or angry manner, resulting in serious bodily injury to her. *See* I.C. § 35–42–2–1(a)(3). The charging information, included in the trial court's instructions to the jury, alleged that Williams "did knowingly or intentionally touch another person, ... [K.H.], in a rude, insolent, or angry manner, resulting in serious bodily injury to" K.H. (App.38). The trial court further advised the jury that to convict Williams of battery,

the State must have proved each of the following elements
The Defendant
1. knowingly or intentionally
2. touched [K.H.]
3. in a rude, insolent, or angry manner.

\* \* \*

If the State did prove each of these elements beyond a reasonable doubt, you may find the Defendant guilty of battery, a Class B misdemeanor.

If you further find beyond a reasonable doubt that the battery resulted in bodily injury to [K.H.], you may find the Defendant guilty of battery, a class A misdemeanor.

---

5. The trial court further instructed the jury that the elements of the crime of rape require the State of Indiana to prove that a person knowingly or intentionally had sexual intercourse with a person of the opposite sex, and that other person was compelled by force or imminent threat of force. (App.43). In addition, the trial court instructed the jury that a person

attempts to commit a rape when, acting with the culpability required for commission of the rape, he engages in conduct that constitutes a substantial step toward commission of the rape. (App.40).

If you further find beyond a reasonable doubt that the battery resulted in serious bodily injury to [K.H.], you may find the Defendant guilty of battery, a Class C felony.

(App.45).

The essential elements of the crime of attempted rape include the defendant's intent to commit the crime of rape and his conduct constituting a substantial step toward the commission of rape—which are not essential elements of the crime of criminal confinement. In its final arguments to the jury, the State strongly asserted that Williams' intent to commit the crime of rape was evidenced by the fact that after attacking K.H., her pants had been unzipped and, along with her underwear, had been pulled down to her knees, and that this conduct by Williams constituted a substantial step toward committing the crime of rape. On the other hand, the offense of criminal confinement merely requires proof of confinement without the victim's consent. It may be true, hypothetically, that to establish the offense of attempted rape in a given case does not require proof of the victim's confinement without her consent; but, based upon the evidentiary facts herein, we are hard pressed to find a reasonable probability that the jury in this case could have concluded that Williams' actions constituting the attempted rape of K.H. did not include his attack upon and contemporaneous confinement of K.H. without her consent. K.H. has no memory of the event, but she was found lying on the ground, unconscious and bloody, with her pants unzipped and, along with her underwear, pulled down to her knees, and Williams was her admitted attacker. The State even acknowledges that "the jury may have used the same evidence to convict [Williams] of attempted rape and confinement," State's Br. at 9, and we must agree.

Further, to establish the offense of battery, as a class C felony, requires proof that Williams touched K.H. in a rude, insolent, or angry manner with resulting "serious bodily injury." *See* I.C. 35–42–2–1(a)(3). However, serious bodily injury is not an essential element of the crime of attempted rape, as a class B felony, of which the jury found Williams guilty. *See* I.C. § 35–41–4–1.

We reach the conclusion that the record establishes clear evidence to support the jury's conclusion that Williams committed attempted rape, as a class B felony, and battery, as a class C felony, and that these convictions were based on separate evidentiary facts. However, we find a reasonable probability exists that the same evidentiary facts the jury used to establish his commission of these two offenses were also "used to establish the essential elements of" the third offense—criminal confinement, as a class C felony. *Davis,* 770 N.E.2d at 323. Therefore, the double jeopardy provision of Indiana's Constitution bars that conviction, and we hereby order it be reversed and vacated.

b. *Offenses against J.R.*

■ Williams was convicted of criminal confinement of J.R., as a class D felony. Therefore, the State was required to prove that Williams knowingly or intentionally confined J.R. without her consent. *See* I.C. § 35–42–3–3(a). The trial court informed the jury that the charging information alleged Williams had "knowingly or intentionally confine[d] . . . [J.R.], without her consent." (App.39). The trial court instructed the jury that to convict Williams of criminal confinement, as a class D felony, it "must have proved . . . beyond a reasonable doubt" that Williams "knowingly or intentionally confined [J.R.] without her consent." (App.44).

Williams was also convicted of battery of J.R., as a class A misdemeanor. Therefore, the State was required to prove that Williams knowingly or intentionally touched J.R. in a rude, insolent, or angry manner, resulting in her bodily injury. *See* I.C. § 35–42–2–1(a)(1). The trial court informed the jury that the charging information alleged Williams had "knowingly or intentionally touch[ed] ... [J.R.], in a rude, insolent or angry manner, resulting in bodily injury to" J.R. (App.39). The trial court instructed the jury that to convict Williams of battery, as a class A misdemeanor, "the State must have proved" that Williams "knowingly or intentionally touched [J.R.], ... result[ing] in bodily injury to [J.R.]."

The evidence necessary to establish the essential elements of confinement includes the fact that Williams confined J.R. against her consent; this element was not necessary to establish his commission of the battery offense. Testimony established that after Williams tackled J.R. to the ground, he turned her over and sat astride her. Further, J.R. testified that when Williams "was straddled directly over [her] midsection and [her] hips," this prevented her from getting away. (Tr. 122). To establish that Williams committed the offense of battery, as a class D felony, the State was required to prove an additional element—that Williams touched J.R. in a rude, insolent, or angry manner, resulting in bodily injury to her. J.R. and the bicyclist testified that Williams had struck her repeatedly with his fist, and the evidence established that this resulted in facial injuries and a chipped tooth. Proof of such bodily injury was not an essential element to establish his commission of criminal confinement, as a class D felony. Therefore, the fact of J.R.'s bodily injury was not an evidentiary fact that the jury would have used to establish the essential elements of criminal confinement. More-over, the evidence supports the reasonable inference that Williams' confinement of J.R. was more extensive than necessary to commit battery. *Cf. Benavides v. State,* 808 N.E.2d 708, 712 (Ind.Ct.App.2004) (double jeopardy does not prohibit convictions for criminal confinement and robbery when facts indicate confinement was more extensive than necessary to commit robbery).

We do not find that there is a reasonable probability that the jury used the same evidentiary facts to establish the essential elements of both criminal confinement, as a class D felony, and battery, as a class A misdemeanor, against J.R.

### 2. Aggregate Sentence

■ Williams also argues that the sentences imposed by the trial court for his convictions of confinement and battery of K.H., and his conviction of confinement of J.R. violate the sentencing limitations of Indiana Code section 35–50–1–2(c) imposing consecutive sentences. He reminds us that none of his convictions were for offenses defined by statute as violent offenses. He then notes that his convictions of confinement and battery—two class C felonies, and one class D felony, the aggregate sentence imposed by the trial court is fourteen years. Williams argues that this violates the statutory sentencing limitation because all of the offenses occurred "on the same campus and on the same night," and "were part of a single 'episode of criminal conduct.'" Williams' Br. at 9. Williams argues that the statute limits the aggregate for these three sentences to the ten-year advisory sentence for a class B felony. We disagree.

■ The trial court's sentencing authority is only that which is conferred by the legislature. *Cooper v. State,* 831 N.E.2d 1247, 1252 (Ind.Ct.App.2005),

*trans. denied.* Moreover, a trial court generally "cannot order consecutive sentences in the absence of express statutory authority." *Reed v. State,* 856 N.E.2d 1189, 1199 (Ind.2006). Indiana Code section 35–50–1–2(c) authorizes the trial court to "order terms of imprisonment to be served consecutively." However, that authority is limited as follows:

> [E]xcept for crimes of violence, the total of the consecutive terms of imprisonment, exclusive of terms of imprisonment under [the habitual offender or habitual controlled substance offender provisions], to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the advisory sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

*Id.*

Williams is correct in that the statutory list of crimes of violence contains none of the offenses of which he was convicted. *See* Ind.Code § 35–50–1–2(1) (defining "crimes of violence" as used in section 2). Further, we have held that the statute expresses clear legislative delineation of "the exact crimes" that are "to be considered violent crimes" in determining whether consecutive sentencing may be ordered. *Ballard v. State,* 715 N.E.2d 1276, 1280 (Ind.Ct.App.1999). Thus, any characterization of the crimes Williams committed on November 29, 2005, as being violent in nature is of no moment.

The statute provides that an " 'episode of criminal conduct' means offenses or a connected series of offenses that are closely related in time, place, and circumstance." I.C. § 35–50–1–2(b). In *Reed,* our Supreme Court referred to the statutory language as the lodestar, specifically, its "terms: 'a connected series of offenses that are closely connected in time, place, and circumstance.' " 856 N.E.2d at 1200 (quoting I.C. § 35–50–1–2(b)). We acknowledge that the attacks on K.H. and J.R. both took place on the Purdue campus and on the same night. However, the attacks were separated by a period of approximately ninety minutes, and the evidence at trial established that after the attack on K.H., Williams went back to his residence and changed clothes. Further, witnesses testified to the location of the attacks using a map—which reflects that the attacks took place on opposite ends of the campus. We conclude that the confinement and battery of K.H. and the confinement and battery of J.R. were not so "closely related in time, place and circumstance" as to constitute a single episode of criminal conduct pursuant to the statute. I.C. § 35–50–1–2(b).

Williams cites no authority for the proposition that the statute can only be applied to the aggregate of some of the multiple sentences which were ordered to be served consecutively. The statute does provide a limit of sentence when "the defendant is sentenced for felony convictions arising out of an episode of criminal conduct." I.C. § 35–50–1–2(c). Here, there were two episodes of criminal conduct: one being the attack on K.H., and one being the attack on J.R.

■ For the episode of his attack on K.H., Williams was sentenced to sixteen years for attempted rape, a class B felony; six years for criminal confinement with bodily injury, a class C felony; and six years for battery resulting in serious bodily injury, a class C felony. Thus, for that episode, the aggregate sentence was twenty-eight years. The advisory sentence for the felony which is one class of felony higher than the class B felony is the thirty-year term for a class A felony offense. *See* I.C. § 35–50–2–4. Therefore, the ag-

gregate consecutive sentences for the criminal episode of his attack on K.H. did not violate the statute. Further, having ordered that Williams' conviction for criminal confinement, as a class C felony, of K.H. be vacated, the aggregate sentence for that episode of criminal conduct will be twenty-two years. Again, this does not violate the statutory limitation.

For the episode of his attack on J.R., Williams was sentenced to two years for the criminal confinement, a class D felony, and to one year for battery, a class A misdemeanor. Hence, the aggregate consecutive sentence is three years. The advisory sentence for the felony which is one class of felony higher than the class D felony is the four-year advisory term for a class C felony. *See* I.C. § 35–50–2–6. Therefore, the aggregate consecutive sentences for the criminal episode of Williams' attack on J.R. does not violate the statute.

Affirmed in part, reversed in part, and remanded to the trial court with instructions to vacate Williams' conviction for criminal confinement as a class C felony.

NAJAM. J., and BROWN, J., concur.