## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 11 2015, 5:50 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Kristin A. Mulholland<br>Appellate Public Defender<br>Crown Point, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana<br><br>Angela N. Sanchez<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Major Loren Wilson,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | August 11, 2015<br><br>Court of Appeals Case No.<br>45A03-1412-CR-425<br><br>Appeal from the Lake Superior Court<br><br>The Honorable Diane Ross Boswell, Judge<br><br>Trial Court Cause No.<br>45G03-1403-FA-10 |

**Kirsch, Judge.**

[1] Major Loren Wilson was convicted of criminal deviate conduct[1] as a Class A felony and burglary[2] as a Class B felony, was adjudicated a habitual offender, and was sentenced to an aggregate 100 years of incarceration. He appeals and raises the following restated issue for our review: whether the State presented sufficient evidence to support his conviction for Class B felony burglary.

[2] We affirm.

## Facts and Procedural History

[3] In the early morning hours of March 4, 2014, T.R. was alone in the apartment she shared with her mother. T.R.'s mother had left for work and locked the door when she left. T.R. was in her bedroom watching television when, at approximately 2:00 a.m., she heard someone in the apartment. She assumed her mother had forgotten something and returned. T.R. looked up and saw a man standing in her bedroom doorway, holding a knife and wearing a black ski mask and yellow latex gloves. He entered the bedroom and told T.R. to turn off the television so she would not recognize his face. T.R. unplugged the television from the outlet behind the bed. She attempted to get off of the bed,

---

[1] *See* Ind. Code § 35-42-4-2. We note that, effective July 1, 2014, this statute was repealed. However, as Wilson committed his crimes prior to that date, he was charged under the version of the statute in effect at the time he committed the crimes.

[2] *See* Ind. Code § 35-43-2-1. We note that, effective July 1, 2014, a new version of this criminal statute was enacted. Because Wilson committed his crimes prior to July 1, 2014, we will apply the statute in effect at the time he committed his crimes.

but the intruder pushed her back on the bed and put the knife against her neck. The man then ordered T.R. to remove all of her clothes and to lie on the bed.

[4] T.R. recognized the man's voice as having the distinct accent of her downstairs neighbor, Wilson. As T.R. was lying on the bed, Wilson rubbed his gloved hand over her body and ordered her to turn over onto her stomach, while he continued to rub her body. Wilson then told T.R. to again lie on her back, and he removed the glove off of his right hand and inserted his finger into her vagina. After that, Wilson removed the part of his ski mask that covered his mouth and performed oral sex on T.R. During the entire assault, Wilson held the knife in his hand.

[5] Afterward, Wilson ordered T.R. to go to the bathroom and followed her with the knife in his hand. He told her to clean her vagina with a washcloth and watched as she did so. Wilson then had T.R. go back to the bedroom and lie back on the bed. He directed T.R. to turn the television back on. He then took several photos of her vagina with his cell phone. Wilson asked T.R. what she was going to do next, and she replied that she was going to sleep. Wilson left the apartment, but T.R. was too frightened to call the police at that time. She put her clothes back on and tried to fall asleep, which she was eventually able to do.

[6] The next morning, Wilson knocked on T.R.'s door, and when she answered the door, he handed her a note. The note stated, "[T.R.] as I said, don't say anything to anyone, not even your mother." *State's Ex.* 7. T.R. recognized the

handwriting as being Wilson's because he had previously given her and her mother holiday cards. After he handed T.R. the note, Wilson returned to his own apartment.

[7] When T.R.'s mother returned from work, T.R. told her mother what happened, and her mother called the police. The police arrived and arrested Wilson. T.R. went to a local hospital, and a rape kit was performed. A minor DNA profile consistent with Wilson's DNA was located on toilet paper that was lining T.R.'s underwear at the time of the assault. This minor DNA profile consistent with Wilson's DNA would likely only occur once in eighty-three million unrelated individuals. T.R. identified Wilson as her attacker from a photographic array and later identified him in court as well. A handwriting analysis was performed on the note Wilson gave T.R., and a conclusion was made that Wilson wrote the note.

[8] The State charged Wilson with Class A felony criminal deviate conduct, two counts of Class B felony criminal deviate conduct, Class B felony criminal confinement, Class B felony burglary, Class B felony burglary while armed with a deadly weapon, Class C felony battery by means of a deadly weapon, Class C felony sexual battery, Class D felony sexual battery, and Class D felony criminal confinement. The State also alleged that Wilson was a habitual offender. Wilson was found guilty as charged at the conclusion of a jury trial, and Wilson admitted to being a habitual offender. The trial court entered judgment only for Wilson's convictions of Class A felony criminal deviate conduct and Class B felony burglary while armed with a deadly weapon and

found Wilson to be a habitual offender. Wilson was sentenced to fifty years for the criminal deviate conduct conviction, enhanced by thirty years for the habitual offender finding, and twenty years for the burglary conviction, for a total executed sentence of 100 years. Wilson now appeals.

## Discussion and Decision

[9] The deferential standard of review for sufficiency claims is well settled. This court will neither reweigh the evidence nor assess the credibility of witnesses. *Tooley v. State*, 911 N.E.2d 721, 724 (Ind. Ct. App. 2009), *trans. denied*; *Elisea v. State*, 777 N.E.2d 46, 48 (Ind. Ct. App. 2002). Rather, we will consider only the evidence and reasonable inferences most favorable to the trial court's ruling. *Elisea*, 777 N.E.2d at 48. We will affirm unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Tooley*, 911 N.E.2d at 724-25. Thus, if there is sufficient evidence of probative value to support the conclusion of the trier of fact, then the verdict will not be disturbed. *Trimble v. State*, 848 N.E.2d 278, 279 (Ind. 2006).

[10] Wilson argues that the State failed to present sufficient evidence to support his conviction for Class B felony burglary while armed with a deadly weapon. He specifically alleges that the State failed to prove that he broke into T.R.'s apartment because no evidence was presented to establish how he "might have entered the apartment." *Appellant's Br*. at 9. Wilson contends that, because there was no evidence as to how he could have gotten into the apartment, the

State failed to meet its burden of proof, and insufficient evidence was presented to support his burglary conviction.

[11] In order to convict Wilson of Class B felony burglary while armed with a deadly weapon, the State was required to prove beyond a reasonable doubt that he broke and entered the dwelling of T.R. with the intent to commit the felony of sexual battery while armed with a deadly weapon. Ind. Code § 35-43-2-1. "'Using even the slightest force to gain unauthorized entry satisfies the breaking element of the crime.'" *Hall v. State*, 870 N.E.2d 449, 462-63 (Ind. Ct. App. 2007) (quoting *Davis v. State,* 770 N.E.2d 319, 322 (Ind. 2002)), *trans. denied*. As an example, "'opening an unlocked door or pushing a door that is slightly ajar constitutes a breaking.'" *Id.* at 463 (quoting *Davis*, 770 N.E.2d at 322 (citation omitted)). Circumstantial evidence alone can prove the occurrence of a breaking. *Payne v. State*, 777 N.E.2d 63, 66 (Ind. Ct. App. 2002).

[12] Here, the evidence presented at trial showed that T.R.'s mother had shut and locked the apartment door when she left for work about thirty minutes before Wilson entered the apartment. T.R. was alone in the apartment watching television when she noticed Wilson in her bedroom doorway. Wilson does not challenge the sufficiency for his conviction of criminal deviate conduct and, therefore, does not challenge the fact that he was present in the apartment, he merely alleges that there was insufficient evidence to prove how he got into the apartment.

In *Cockerham v. State*, 246 Ind. 303, 307-08, 204 N.E.2d 654, 657 (1965), our Supreme Court held that a jury can reasonably conclude that "no one could enter the home with the windows and doors [locked] and closed without opening such doors or windows." The Supreme Court went on to state, "This would constitute a 'breaking' even though there be no physical marks showing that force was used . . . [because] [a]s a matter of logic, no one could conclude otherwise than that a door or window had to be pushed open to get inside the house." 246 Ind. at 308, 204 N.E.2d at 657.

We, therefore, conclude that, based on the evidence presented, the jury could reasonably infer that Wilson broke and entered T.R.'s apartment with the intent to commit sexual battery. The State was not required to prove the exact means of Wilson's entry into the apartment or that force was used to gain entry. It was sufficient to prove that Wilson was inside the apartment and could only have gotten inside by opening the door, which T.R.'s mother had shut and locked when she left for work. We conclude that the State presented sufficient evidence to support Wilson's conviction for burglary.

Affirmed.

Najam, J., and Barnes, J., concur.