## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 20 2018, 6:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald J. Berger
Law Office of Donald J. Berger
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Stephen Anthony Byrd,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 20, 2018

Court of Appeals Case No.
71A05-1710-CR-2288

Appeal from the St. Joseph
Superior Court

The Honorable Elizabeth C.
Hurley, Judge

Trial Court Cause No.
71D08-1509-F1-12

**Najam, Judge.**

# Statement of the Case

Stephen Anthony Byrd appeals his convictions for attempted murder, a Level 1 felony, and burglary, as a Level 1 felony, following a jury trial. Byrd presents four issues for our review, which we consolidate and restate as the following three issues:

1. Whether the trial court abused its discretion when it admitted into evidence video recordings police officers found on his cell phone.

2. Whether the State presented sufficient evidence to support his convictions.

3. Whether his convictions violate double jeopardy principles.

We affirm.

# Facts and Procedural History

In early 2014, Byrd began dating Kenya Belcher, who lived in Mishawaka with her two children. In March, Byrd moved into Belcher's home. There was no formal rental agreement between Byrd and Belcher, but he sometimes gave Belcher money.

On September 14, 2015, Belcher and Byrd "broke up" and she told him that she did not want him to live in her house anymore. Tr. Vol. III at 20. In the ensuing days, Byrd asked Belcher whether he could come back to her house, and she told him "no each time." *Id.* at 23. Belcher then asked her stepmother,

Cheryl Ashe, to come and stay with her at Belcher's house, and she did. Belcher and Ashe changed the locks to the doors on the house.

[5] On September 17, Belcher arrived home with her children at about 7:00 p.m., and she started preparing dinner when she smelled cigarette smoke coming from the basement. Belcher went downstairs to investigate, and when she reached the bottom of the stairs and went through a door to the basement, someone struck her in the head. She fell down, and Belcher saw Byrd standing over her. Byrd began stabbing her with a knife. Belcher yelled for help. After Byrd had stabbed her multiple times, Belcher was able to get up, and she ran up the stairs, where she found Ashe and her children near the top of the basement stairs. Belcher kept running and ran out of the house and into the street, and Byrd followed her outside, but he ran in the opposite direction. Belcher eventually made her way back to her house and waited for emergency medical technicians to arrive. After Belcher was transported to a local hospital, she underwent a diagnostic scan of her head, and she received stitches, staples, and glue to repair the multiple stab wounds.

[6] A few days later, police officers apprehended Byrd after a foot chase. Byrd agreed to give a statement, and he signed a *Miranda* waiver form. Byrd explained that Belcher had attacked him, and he offered to show the interviewing police officer text messages to support his story. Accordingly, the officer gave Byrd an additional waiver authorizing "a complete search" of his phone, and Byrd signed the waiver. State's Ex. 50. The officer then asked Byrd whether Byrd would let him give the phone to a forensics specialist to search

the phone for communications with Belcher, and Byrd agreed. Byrd gave the passcode to his locked phone to the officer. The forensics specialist found multiple text messages between Byrd and Belcher, and he also found several video recordings Byrd had made during the late afternoon of September 17, 2015, depicting Byrd inside Belcher's house saying things like: "She tried to outsmart me, she tried to lock me out of the house"; "I'm faced with a bad decision, it's a decision that I have no choice but to make. . . [and] by the time you see this, I will be dead"; "If you play with somebody, if you play with their emotions, you can die." State's Ex. 64.

[7] The State charged Byrd with attempted murder, a Level 1 felony, and two counts of burglary, one as a Level 1 felony and one as a Level 2 felony. Byrd filed a motion to suppress evidence, namely, the video recordings found on his cell phone. The trial court denied that motion following a hearing. A jury found Byrd guilty as charged. The trial court entered judgment of conviction only for attempted murder, a Level 1 felony, and burglary, as a Level 1 felony. And the court sentenced Byrd to an aggregate term of seventy years executed. This appeal ensued.

# Discussion and Decision

## *Issue One: Admission of Evidence*

[8] Byrd first contends that the trial court abused its discretion when it admitted into evidence the video recordings recovered from his cell phone.[1] Byrd initially challenged the admission of this evidence through a motion to suppress but now appeals following a completed trial. Thus, the issue is appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial. *Lanham v. State*, 937 N.E.2d 419, 421-22 (Ind. Ct. App. 2010). A trial court is afforded broad discretion in ruling upon the admissibility of evidence, and we will reverse such a ruling only when the defendant has shown an abuse of discretion. *Id.* at 422. An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Id.* We do not reweigh the evidence, and we consider conflicting evidence in the light most favorable to the trial court's ruling. *Id.*

[9] In essence, Byrd contends that his consent to search his cell phone was limited to text messages and did not include the video recordings. But Byrd ignores the plain language of the waiver he signed, which explicitly states that he consented to a "complete search" of his cell phone and contains no limitation of any kind. State's Ex. 50. Byrd's contention is entirely without merit. And, in any event, in light of the overwhelming evidence of Byrd's guilt, including text messages

---

[1] We note that Byrd does not set out the applicable standard of review, which is required by Indiana Appellate Rule 46(A)(8)(b).

indicating that he was not allowed to go back to Belcher's house and Belcher's eyewitness testimony regarding the attack, any error in the admission of this evidence was harmless. Ind. Trial Rule 61; *see Camm v. State*, 908 N.E.2d 215, 225 (Ind. 2009).

### *Issue Two: Sufficiency of the Evidence*

[10] Byrd next contends that the State presented insufficient evidence to support his convictions. In reviewing the sufficiency of the evidence, we consider only the evidence and reasonable inferences most favorable to the conviction, neither reweighing the evidence nor reassessing witness credibility. *Griffith v. State*, 59 N.E.3d 947, 958 (Ind. 2016). We will affirm the judgment unless no reasonable fact-finder could find the defendant guilty. *Id.*

[11] To prove attempted murder, a Level 1 felony, the State was required to show that Byrd knowingly or intentionally attempted to kill Belcher when he intentionally stabbed her with the intent to kill. Ind. Code §§ 35-42-1-1(1) and 35-41-5-l(a) (2015). To prove burglary, as a Level 1 felony, the State was required to show that Byrd broke and entered Belcher's home with the intent to commit murder which resulted in serious bodily injury to Belcher, namely, extreme pain. I.C. § 35-43-2-1.

[12] Byrd first asserts that, without the improperly admitted video recordings, "the State's evidence lacks sufficient evidence to prove the requisite intent for the charge of attempted murder." Appellant's Br. at 16. But Byrd does not support that contention with cogent argument. And, in any event, we have already held

that the trial court did not abuse its discretion when it admitted the video recordings into evidence at trial. Further, there is more than enough evidence other than the video recordings to support Byrd's attempted murder conviction, most notably Belcher's testimony.

[13] Byrd also asserts that the State could not prove burglary because it did not show that Byrd did not reside with Belcher at the time of the attack. In support of that contention, Byrd does not cite to the record on appeal or any relevant case law or statutory law, and the issue is waived. App. R. 46(A)(8)(a). Waiver notwithstanding, the State presented ample evidence that Byrd did not reside with Belcher on September 17, 2015, and, instead, that he broke and entered her house. The evidence is sufficient to support both of Byrd's convictions.

### Issue Three: Double Jeopardy

[14] Finally, Byrd contends that his convictions violate double jeopardy principles. Byrd's argument on this issue consists of three sentences and merely alleges that "a person may not be twice punished for a single offense arising from one set of operative circumstances," citing *Bevill v. State*, 472 N.E.2d 1247 (Ind. 1985),[2] and *Haggard v. State*, 445 N.E.2d 969 (Ind. 1983). Appellant's Br. at 18. Byrd

---

[2] In *Richardson v. State*, 717 N.E.2d 32, 61 (Ind. 1999), Justice Boehm noted that, in its holding in *Bevill*, the Indiana Supreme Court was "incorrect in citing earlier authority" for the assertion that "multiple punishments in one proceeding violated Article 1, § 14" of the Indiana Constitution. (Boehm, J., concurring in result). And Justice Boehm noted that "[o]nly after *Bevill* was decided in 1985, do we find cases referring to double jeopardy and citing state and federal constitutions in dealing with multiple punishments. And in every instance . . . there is no suggestion that there is any difference between the two constitutions." *Id.* at 63.

suggests that, because both of his convictions include an element of serious bodily injury, they cannot both stand.[3] We cannot agree.

[15] In *Davis v. State*, 770 N.E.2d 319, 323 (Ind. 2002), our Supreme Court addressed a defendant's contention that "his convictions for attempted murder, aggravated battery[,] and burglary as a class A felony [violated double jeopardy principles because they arose] from the same factual evidence:  [an] attack with a knife."  The Court explained that

> Article 1, section 14 provides that "[n]o person shall be put in jeopardy twice for the same offense."  Double jeopardy analysis involves the dual inquiries of the "statutory elements test" and the "actual evidence test," as generally described in *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999). . . .
>
> The actual evidence test prohibits multiple convictions if there is "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Richardson*, 717 N.E.2d at 53.
>
> * * *
>
> Based upon our review of the evidence, charging information[,] and jury instructions, the conviction for aggravated battery arose from the same evidence that gave rise to the conviction for attempted murder.  Therefore, a reasonable possibility exists that the jury used the evidence proving the elements of attempted murder to also establish the elements of aggravated battery.

---

[3] Byrd does not clarify whether he alleges a violation of double jeopardy principles under the federal or state constitutions, or both.

> Because both convictions cannot stand under the Indiana Double Jeopardy Clause, we vacate the conviction for aggravated battery.

*Id.* at 323-24.

[16] Here, there is no apparent double jeopardy violation under the statutory elements test. As for the actual evidence test, the attempted murder charge alleged that Byrd stabbed Belcher multiple times, and the "serious bodily injury" element of the burglary charge was Belcher's "extreme pain." Appellant's App. Vol. II at 3. In essence, Byrd contends that Belcher's extreme pain was caused by the stabbing and the convictions violate double jeopardy principles because the same evidence was used to support both convictions. But the evidence shows that Belcher's extreme pain did not occur during the stabbing, but came later. In particular, at trial, Belcher testified that she did not feel *any* pain during the stabbing or in the immediate aftermath. Tr. Vol. III at 39. Rather, it was only after she was admitted to the hospital that she began to experience pain and requested pain medication. And nothing in the State's argument at trial suggested that Belcher's extreme pain was simultaneous with the stabbing. Moreover, Byrd ignores the fact that he hit Belcher in the head before he began to stab her, which caused Belcher pain independent of the stabbing. Therefore, there is no reasonable possibility that the jury used the evidence proving the elements of attempted murder to also establish the elements of burglary. *See Davis*, 770 N.E.2d at 324. We hold that Byrd's convictions do not violate double jeopardy principles.

[17]     Affirmed.

Crone, J., and Pyle, J., concur.