**Eddie L. FREDRICK, Appellant (Defendant below),**

**v̇.**

**STATE of Indiana, Appellee (Plaintiff below).**

No. 20S00–0005–CR–00336.

Supreme Court of Indiana.

Oct. 5, 2001.

Kenneth R. Martin, Goshen, IN, Attorney for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SULLIVAN, Justice.

Defendant Eddie Fredrick was convicted of murder for killing a police informant. We affirm his conviction and sentence, concluding that he waived his right to be tried separately from a co-defendant, that an accomplice's testimony was sufficiently creditworthy to support the conviction, and that the aggravating circumstances identified by the trial court support the enhanced sentence imposed. We also reject his claims of fundamental error as not rising to the level necessary to warrant relief.

### Background

The facts most favorable to the judgment indicate that on August 19, 1998, Defendant and Reginald Dillard were hired by Savane Williams to kill Christopher Thomas because he was acting as a police informant. Thomas was residing in a room at the Three Point Motel in Elkhart, Indiana. Dillard and Defendant used a mutual friend, Tricia Mock, as a decoy to get Thomas to open the door. Mock knocked at the door of Thomas's room and Defendant forced himself into the room after Thomas opened the door. Thomas ran out of the hotel room, but was shot near his door and fell to the ground. Mock testified that the shots came from outside the hotel room, presumably from Dillard. Defendant then stood over Thomas and fired three or four more shots into his body. Thomas died as a result of gunshot wounds to the head and chest.

Defendant and Dillard were tried together and found guilty of murder.[1] The trial court sentenced him to 65 years in prison.

I

Defendant contends that "the consolidation of his case with co-defendant Dillard deprived him of his right to a fair trial."

Defendant signed a document captioned "Waiver of Right to Have Separate Trial from Co–Defendant and Waiver of Conflict of Interest" and filed with the trial court on the first day of trial.[2] The document indicated the following: (a) Defendant had been advised by his attorney that he had a right to a separate jury trial and that he made his request for a joint trial despite his attorney's advice recommending a separate trial; (b) Defendant's attorney had informed him that the state would call at least one "jail-house snitch" who would testify that Dillard confessed to the crime and implicated Defendant in his confession; and (c) Defendant's attorney advised him that he had "the right to confront and cross examine ALL witnesses against [him], including anything that [Dillard] purportedly told any witnesses...." Defendant contends that this instrument was not sufficient to waive his right to be tried separately from Dillard.

Whether Defendant's written "waiver" was ineffective is not determinative of whether he waived his right to a separate trial. Absent a motion by Defen-

---

1. Indiana Code § 35–42–1–1 (1998). Dillard also appeals his conviction. We address his claims on appeal in a separate decision. *Dillard v. State,* 755 N.E.2d 1085 (Ind.2001).

2. This document is substantially similar to the "waiver" signed by co-defendant Dillard. However, Dillard's waiver followed Dillard's earlier motion for a separate trial. *See Dillard,* at 1087.

dant requesting a separate trial, the trial court is not required to separate the trial. Ind.Code § 35–34–1–12(a) (1998). A motion for a separate trial must be made prior to the commencement of the trial.[3] *Id.* A defendant's right to a separate trial is waived if the defendant fails to make the motion at the appropriate time. *Id.* Here, Defendant never made a motion to separate his trial from co-defendant Dillard, thereby waiving his right to a separate trial.

## II

Defendant contends that the "testimony of jailhouse informants was acquired in derogation of Defendant's right to counsel." Appellant's Br. at 16.

The State called two jailhouse informants, Tyrand Terry and David Brownlee, to testify against Defendant and co-defendant Dillard. Defendant argues that their testimony was vital because it corroborated that of the State's main witness. Appellant's Br. at 16.

■ Defendant acknowledges that he failed to object to the testimony of the informants at trial. Appellants Br. at 20. He urges that we find that the testimony of the informants amounted to fundamental error. The fundamental error doctrine holds that we will grant relief even where error is not properly preserved for appeal when the error is so prejudicial to the rights of the defendant that a fair trial was impossible. *See Carter v. State,* 738 N.E.2d 665, 677 (Ind.2000); *Charlton v. State,* 702 N.E.2d 1045, 1051 (Ind.1998).

■ A criminal defendant's right to counsel is violated when the government intentionally creates a situation likely to induce a defendant to make an incrimina-

ting statement in the absence of counsel. *See Massiah v. United States,* 377 U.S. 201, 206, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); *Rutledge v. State,* 525 N.E.2d 326, 327 (Ind.1988). However, there is no violation where the government unintentionally obtains the information regarding an incriminating statement. The Supreme Court's decision in *Massiah* applies to information that government agents *deliberately elicit* from a defendant. *Massiah,* at 206, 84 S.Ct. 1199 (emphasis added). As we have previously recognized,

> [T]he Sixth Amendment is not violated whenever—by luck or happenstance— the State obtains incriminating statements from the accused after the right to counsel has attached.... A defendant does not make out a Sixth Amendment violation "simply by showing that an informant, either through prior arrangement or voluntarily, reported his incriminating statements to the police. Rather, the defendant must demonstrate that the police and their informant took some action, beyond merely listening, that was designed deliberately to elicit incriminating remarks."

*Wisehart v. State,* 693 N.E.2d 23, 61 (Ind. 1998) (quoting *Kuhlmann v. Wilson,* 477 U.S. 436, 459, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986) (citations omitted)).

■ Here Defendant does not demonstrate that the police intentionally elicited information from Defendant in violation of *Massiah.* Defendant does not point to any definitive evidence that either informant worked as the State's agent *and* elicited information. Defendant points to a portion of Terry's testimony that suggests that he might have been asked to write down notes from conversations he had

---

**3.** "[E]xcept that the motion may be made before or at the close of all the evidence during trial if based upon a ground not previ-

ously known." Ind.Code § 35–34–1–12(a) (1998).

with Defendant and Dillard.[4] Terry testified that no one had made any promises of leniency in his case in exchange for acting as an informant. Even if Terry was asked to take notes, as Defendant alleges, Defendant does not point to evidence suggesting that Terry elicited the information from him. Terry's taking of notes, even at the request of the police, does not violate the Sixth Amendment if he did not elicit the information. *See Hobbs v. State,* 548 N.E.2d 164, 167 (Ind.1990). Because there is no evidence that Terry elicited information, we find no error, fundamental or otherwise.

The other jailhouse informant, Brownlee, testified that Defendant admitted to killing Thomas. His testimony, however, suggests that *Defendant* initiated the conversation and volunteered the information. Furthermore, defendant presents no evidence that the police instructed Brownlee to ask Defendant any questions. Again, we find no error, fundamental or otherwise, in allowing Brownlee to testify.

### III

Defendant contends that there was insufficient evidence to sustain his murder conviction. Specifically, Defendant argues that his conviction was supported solely by be unreliable testimony of Tricia Mock. Appellants Br. at 21. We analyze the identical claim in Dillard's appeal and find Mock's testimony sufficiently creditworthy to support the conviction. *See Dillard,* at 1083.

### IV

Defendant contends that his verdict was not based on the guilt of the defendants,

---

4. [State]: Mr. Terry, you indicate that you took notes of conversations that you had with Mr. Dillard and Mr. Fredrick; is that correct?
   [Terry]: Yes, sir.
   [State]: Okay. What's the correct—what is it you're saying?

but rather on the State's improper request to the jury to find guilt based on reasons other than the evidence. Appellant's Br. at 24 and 25.

■ Defendant points out the following instances during the State's final argument that he asserts amount to prosecutorial misconduct:

> We have had testimony in this case that tells us that [Defendant] and [Dillard] aren't even from here. They're from Detroit, Michigan.
>
> Now, these fellows come down from Detroit, where they would undoubtedly be little twigs, so they can kind of hang out in sort of the Mayberry of the area and take advantage of us.
>
> \* \* \*
>
> Two fellows from Detroit just trying to make a living. But as I said, this is not Detroit. This is your community, and you make the rules, and you determine what you will find as acceptable behavior, and what you will tolerate from anyone who chooses to participate in our community.

(R. at 1184–7.) Defendant also cites an instance during the final argument in which the State referred to a statement, attributed to Defendant, that the case would not have been tried in Detroit because no gun was found: "They're so arrogant in this business they don't believe anybody can touch them. It goes back to what they told [Terry]. This case wouldn't be tried [in Detroit]."

Defendant also cites the following comment:

> [Terry]: That I did as—after they told me so when they told me write down stuff that they said.

The State of Indiana would respectfully request that on each of those verdict forms you find that the evidence firmly convinced you that [Defendant and Dillard] murdered [Thomas] and check the box signed guilty of murder. In so doing you're gonna send a message to [Defendant and Dillard] and that message is: this ain't Detroit. This ain't the crib. And you're [sic] business isn't welcome here.

(R. at 1126.) Defendant also cites a comment in which the State referred to the fact that the victim was a drug dealer, but did not deserve to die because of that fact: "Did he deal drugs? Yeah. He had problems. Do people who have problems, drug dealers and others, deserve the protection of not being executed in our county or not? Because if they don't, let's just sit back and see what happens." (R. at 1182.)

Defendant failed to object to the State's comments at trial. Therefore, reversal is only possible where there is fundamental error, which we do not find in this instance.

### V

Defendant contends that a preliminary instruction deprived him of the presumption of innocence throughout the trial. Appellant's Br. at 26.

Preliminary instruction no. 5 read:

Under the law you must presume that the Defendants are innocent and you must continue to believe that they are innocent throughout the trial unless the State proves that the Defendants are guilty, beyond a reasonable doubt, of every essential element of the crime(s) charged.

Since the defendants are presumed to be innocent, they are not required to present any evidence to prove their innocence or to prove or explain anything. If at the conclusion of trial, there re-

mains in your mind a reasonable doubt concerning the defendant's [sic] guilt, you must find them not guilty.

(R. at 477–78.)

■ Defendant argues that "the portion instructing the jury that they must 'continue to believe that they are innocent throughout the trial' is rendered nugatory by the succeeding qualifying phrase 'unless the State proves that the defendants are guilty, beyond a reasonable doubt, of every essential element of the crime(s) charged.' " Appellant's Br. at 26. Defendant contends that the language suggests that the presumption of innocence could disappear altogether early in the trial, and a defendant would therefore be deprived of the fundamental right to a presumption of innocence throughout the trial.

Prior to giving the preliminary instructions in this case, the trial court stipulated that the jury must "consider all of the instructions that are given ... as a whole, and [they] are to regard each with the others given...." Another preliminary instruction given soon after the one at issue instructed: "you need to keep an open mind during the trial. You should not form nor express an opinion during the trial and reach no conclusion about this case until it is submitted to you for you deliberations."

The preliminary instructions in their entirety did not instruct the jury that it could come to any premature conclusions regarding guilt. Furthermore, we have previously approved of language that is nearly identical to that of which Defendant now complains. *See Daniel v. State,* 582 N.E.2d 364, 373 (Ind.1991); *Taylor v. State,* 468 N.E.2d 1378, 1381–82 (Ind.1984).

### VI

Defendant contends that his sentence of 65 years was manifestly unreasonable.

The presumptive sentence for murder is 55 years. *See* Ind.Code § 35–50–2–3 (1998). When sentencing a defendant, the trial court may consider certain aggravating and mitigating circumstances. *See* Ind. Code § 35–38–1–7.1 (1998). The trial court may subtract or add up to 10 years to a murder sentence for mitigating and aggravating circumstances respectively. *See* Ind.Code § 35–50–2–3 (1998).

In general, the legislature has prescribed standard sentences for each crime, allowing the sentencing court limited discretion to enhance each sentence to reflect aggravating circumstances or reduce the sentence to reflect mitigating circumstances. *Morgan v. State*, 675 N.E.2d 1067, 1073 (Ind.1996) (citing *Reaves v. State*, 586 N.E.2d 847 (Ind.1992)).

■■■ When the trial court imposes a sentence other than the presumptive sentence, or imposes consecutive sentences where not required to do so by statute, this Court will examine the record to insure that the court explained its reasons for selecting the sentence it imposed. *Archer v. State*, 689 N.E.2d 678, 683 (Ind. 1997) (citing *Hammons v. State*, 493 N.E.2d 1250, 1254 (Ind.1986)). The trial court's statement of reasons must include the following components: (1) identification of all significant aggravating and mitigating circumstances; (2) the specific facts and reasons that lead the court to find the existence of each such circumstance; and (3) an articulation demonstrating that the mitigating and aggravating circumstances have been evaluated and balanced in determining the sentence. *Mitchem v. State*, 685 N.E.2d 671, 678 (Ind.1997) (citing *Jones v. State*, 675 N.E.2d 1084, 1086 (Ind. 1996)).

The trial court found Defendant's age (22 years old) to be a mitigating circumstance. The trial court also found the following aggravating circumstances: The killing was a murder for hire; the victim was a confidential informant who was working for the police; guns were used in the commission of the crime; Defendant showed no remorse; and "Defendant was in [Elkhart County] as a drug dealer and not gainfully employed." The trial court found that the aggravating circumstances outweighed the mitigating circumstances and imposed an enhanced sentence of 65 years imprisonment.

■■■ Defendant complains that the trial court improperly used lack of remorse as an aggravating factor. Defendant cites *Guenther v. State*, 495 N.E.2d 788 (Ind. App.1986), as barring trial courts from using lack of remorse as an aggravating factor where the defendant has pled not guilty. *See Guenther*, at 792. However, we granted transfer in *Guenther* and held that that the trial court's use of lack of remorse as an aggravating circumstance was proper. *See Id.*, 501 N.E.2d 1071 (Ind.1986). We have since held that lack of remorse may be available as an aggravating circumstance even where a defendant has pled not guilty. *See Davidson v. State*, 558 N.E.2d 1077, 1091–92 (Ind.1990); *Dinger v. State*, 540 N.E.2d 39, 40 (Ind. 1989). Therefore, we do not find that the trial court abused its discretion in considering lack of remorse an aggravating circumstance.

■■■ Defendant also argues that the trial court improperly considered his lack of employment as an aggravating circumstance. Appellant's Br. at 29. The sentencing order, however, states that the trial court found it to be an aggravating circumstance that "Defendant was in [Elkhart County] as a drug dealer and not gainfully employed." (R. at 382–383.) While lack of gainful employment alone is not an aggravating circumstance, we believe the trial court's language here indi-

cates that it properly considered Defendant's drug dealing to be aggravating.

### Conclusion

We affirm the judgment of the trial court.

SHEPARD, C.J., and DICKSON, and BOEHM, JJ., concur.

RUCKER, J., Concurs in parts I, II, III, V, and VI, and concurs in result in part IV.