## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 15 2015, 7:57 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Bruce W. Graham<br>Graham Law Firm P.C.<br>Lafayette, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana<br><br>Katherine Modesitt Cooper<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| James Miske, Jr.,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | May 15, 2015<br><br>Court of Appeals Case No.<br>79A02-1409-CR-619<br><br>Appeal from the Tippecanoe Circuit Court<br>The Honorable Donald L. Daniel, Judge<br>Cause No. 79C01-1401-FA-1 |

**Bailey, Judge.**

# Case Summary

James Miske ("Miske") was convicted by a jury of Rape[1] and two counts of Criminal Deviate Conduct,[2] as Class A felonies; Criminal Confinement, as a Class C felony;[3] Strangulation,[4] Domestic Battery,[5] and Intimidation,[6] as Class D felonies; and Battery[7] and Resisting Law Enforcement,[8] as Class A misdemeanors. He now appeals.

We affirm.

# Issues

Miske raises four issues for our review. We restate and reorder these as:

1. Whether there was sufficient evidence to support Miske's convictions for Rape and Criminal Deviate Conduct through the use or threat of deadly force, as charged;
2. Whether Miske's convictions for criminal confinement, domestic battery, and battery are barred on double jeopardy principles;

---

[1] Ind. Code §§ 35-42-4-1(a) & (b)(1) (West 2013). Miske's offenses were committed prior to the July 1, 2014 effective date of statutory provisions our legislature revised in 2013. All statutory citations refer to the substantive provisions applicable based upon the dates of Miske's offenses.

[2] I.C. §§ 35-42-4-2(a) & (b)(1).

[3] I.C. §§ 35-42-3-3(a) & (b)(1).

[4] I.C. § 35-42-2-9(b).

[5] I.C. §§ 35-42-2-1.3(a) & (b)(2).

[6] I.C. §§ 35-42-2-1(a) & (b)(1).

[7] I.C. § 35-42-2-1(a)(1).

[8] I.C. § 35-44.1-3-1(a)(1).

3. Whether the trial court erred when it sentenced Miske to consecutive sentences for offenses that were part of a single transaction under the continuing crime doctrine;

4. Whether the trial court abused its discretion at sentencing in finding certain aggravating circumstances, and whether Miske's sentence is inappropriate in light of the nature of his offenses and his character.

# Facts and Procedural History

Miske was engaged to V.P. Miske and V.P. shared a home in Lafayette, where they lived with V.P.'s four children: three of these were V.P.'s children from prior relationships, and the fourth child had been fathered by Miske.

On January 3, 2014, Miske and V.P. argued about finances and parenting the children. During the argument, Miske grabbed V.P.'s arm with enough force that V.P. was bruised; Miske also scratched her and pushed her to the floor. By the end of the argument, V.P. stated that she no longer wished to be engaged to Miske, Miske agreed that he would move out, and the two went to sleep in separate rooms.

The following day, Miske left for work in the morning. During the morning, Miske became agitated and asked for permission to leave work. He did so with the intent to find someplace to live after moving out of the house he shared with V.P.

By around 2:30 on the afternoon of January 4, Miske had decided to visit the Frankfort home of Gregory Linder ("Linder"), an acquaintance of Miske and a longtime friend of V.P. Linder was in his garage, and he and Miske spent

several hours talking and drinking beer and mixed drinks. Miske told Linder that he was "done" with V.P. and that the relationship was "pretty much over." (Tr. at 151.) Miske was angry and repeatedly raised his voice during the conversation, occasionally "marching around" and "hollering." (Tr. at 153.)

[8] During the conversation, Miske expressed his anger about the behavior of V.P.'s eldest daughter. He also expressed suspicion that V.P. had not been faithful in the relationship, mentioning a specific individual whom Linder and V.P. shared as a common friend; Linder tried to reassure Miske that he should not be concerned about V.P.'s fidelity. At least once, Miske mentioned his military training and stated that he enjoyed hurting people, and stated several times that he was "a demon." (Tr. at 156.) Miske also stated several times that "he felt like putting his hands on" V.P. (Tr. at 160.)

[9] At around 6:30, Linder had become concerned for his own safety in light of Miske's behavior. Linder suggested that Miske leave, "take a chill pill" (Tr. at 157), calm down, and sleep in his truck that night. Miske asked Linder for money; Linder gave Miske a few lottery scratch-off tickets and told him to leave.

[10] From Linder's home, Miske drove to a bar in Lafayette, Ace's Pub. Miske spent several hours at the pub, but was eventually asked to leave. Miske drove back to the home he had been sharing with V.P.

[11] Miske arrived at the home in the early morning hours of January 5, 2014. V.P. had put the couple's infant daughter to sleep, and two older children were also

asleep.[9] V.P. was awake on the living room couch watching television when Miske arrived.

[12] Miske entered the home and came into the living room, and pulled up a bean-bag chair next to V.P.'s couch. V.P. smelled alcohol and cigarettes on Miske, but did not respond to his entrance. Miske got up from the chair and began to walk to the bedroom he had shared with V.P. He asked V.P. to have sex with him, but she refused. Miske said he would find sex elsewhere, and went into the bedroom to use his computer.

[13] After twenty or thirty minutes, Miske came out of the bedroom, grabbed V.P. by her hair, and pulled her off the couch and onto the floor. Miske, a former Marine who stood six-feet, three-inches tall, then began choking the five-feet, three-inches-tall V.P. Miske sat on top of V.P. while pressing his hands around her neck, and demanded to know about "David," the friend V.P. and Linder had in common. (Tr. at 176.) V.P. asked Miske to stop and tried to tell him that she could not breathe, but Miske's choking restricted her airflow.

[14] Miske's yelling eventually awoke V.P.'s son, who came out to see what was happening. V.P. asked Miske to stop because the child was watching, but Miske continued to yell and throw V.P. around. Miske twice pulled V.P. off the floor by her hair, threw her around so that her head hit a wall, and at one point brought his arm down across the bridge of her nose. Miske choked V.P.

---

[9] The fourth child was not present in the home at the time.

multiple times, holding her on the ground while doing so. V.P. thought she was going to die, and asked Miske to stop several times. V.P. told Miske that she was afraid he would kill her, and said she would do whatever he wanted.

[15] At some point, Miske stopped choking V.P. and dragged her to the bedroom, still pulling on her hair. Miske told V.P. to take off his boots, and then told V.P. to remove his pants and to perform oral sex on him. Miske was still holding V.P.'s hair, and forced her head down toward his penis.

[16] Miske next told V.P. to remove her pants and made her get on all-fours on the bed. Miske briefly engaged in vaginal intercourse with V.P. He then began to engage in anal intercourse with V.P., even as she "begged him not to." (Tr. at 183.) V.P. complied with Miske's demands because she was afraid, even as she asked him to stop and told him that it caused her pain. While engaging in these acts, Miske told V.P. that "this if [sic] for Mr. Meyers," referring to the mutual friend of V.P. and Linder. (Tr. at 184.)

[17] Miske proceeded to force V.P. to perform oral sex, vaginal sex, and anal sex with him twice more. During this, Miske continued to hold V.P.'s hair, and said "a lot of messed up things." (Tr. at 184.) Eventually, Miske ejaculated and stopped engaging in sexual conduct with V.P.

[18] After this, Miske and V.P. each sat on opposite ends of the bed from one another. V.P. was crying, while Miske said he knew she would contact police and that he would not kill her; Miske then said he was going to pray "because he was getting ready to kill [V.P.]." (Tr. at 186.) V.P. told Miske that she

would not call police; Miske then said she could call and he would not do anything to her, but that he would not "go down without a fight." (Tr. at 187.)

[19] V.P. begged Miske to go to sleep. Once V.P. was sure Miske was asleep, she went back into the living room, grabbed her phone, and called police.

[20] At around 4:30 a.m., Lafayette Police Officer Amanda Deckard ("Officer Deckard") was the first officer to arrive at the home; a second officer, Officer Stansfield, arrived soon after. Officer Deckard spoke with V.P. and, based upon this discussion, informed Officer Stansfield that they would arrest Miske, who was still asleep in the bedroom.

[21] Officers Deckard and Stansfield entered the bedroom where Miske was sleeping, turned on the lights, and attempted to wake Miske, informing him numerous times that they were from the Lafayette Police Department. Miske gradually awoke, and began fighting with the two police officers, eventually pinning one of his arms underneath his body.

[22] As this struggle occurred, Tippecanoe County Sheriff's Deputy Randy Martin ("Deputy Martin") arrived at the home. As he got out of the car, he heard shouting coming from inside the house and, when he entered the home, found Miske struggling with Officers Deckard and Stansfield. Deputy Martin used his Taser device to administer a drive stun directly to Miske's body; Miske ceased struggling, and was arrested.

[23] After Miske was arrested, Officer Deckard transported V.P. to a local hospital. There, V.P. was examined by Diane Robinson ("Robinson"), a sexual assault nurse-examiner. Robinson determined that V.P. had suffered injuries to her neck consistent with strangulation, as well as bruising to her cervix consistent with blunt-force trauma and injury to her anus. When V.P. brushed her hair, a chunk of hair fell off her head. Robinson concluded that the injuries V.P. had sustained were consistent with having been a victim of sexual assault.

[24] On January 10, 2014, Miske was charged with Rape, two counts of Criminal Deviate Conduct, Criminal Confinement, Intimidation, Strangulation, Domestic Battery, Battery, and Resisting Law Enforcement. **(App'x at 18-27.)**

[25] A jury trial was conducted from July 8 to July 10, 2014. At the conclusion of the trial, the jury found Miske guilty of all the charged offenses.

[26] On August 12, 2014, the trial court conducted a sentencing hearing. At the hearing's close, the trial court entered judgments of conviction against Miske on all nine guilty verdicts, and adjudicated him a Sexually Violent Predator. Miske was sentenced for forty-five years imprisonment for Rape, forty-five years imprisonment for each of the two counts of Criminal Deviate Conduct, six years imprisonment for Criminal Confinement, two years imprisonment for Intimidation, two years imprisonment for Strangulation, two years imprisonment for Domestic Battery, one year of imprisonment for Battery, and one year of imprisonment for Resisting Arrest. The trial court ran all the sentences consecutively.

[27] On August 22, 2014, the trial court entered an order clarifying the sentencing order. In the clarification, the court reiterated that all of the sentences were to run consecutively, but:

> The Defendant is sentenced to forty-five (45) years on each of the A felonies [Rape and two counts of Criminal Deviate Conduct], for a total of one hundred and thirty-five (135) years. On the remainder of the offenses, the Defendant's sentence is capped at a total of ten (10) years. The one hundred thirty-five (135) years on the A felonies and the ten (10) years on the remaining offenses shall all be executed at the Indiana Department of Corrections [sic] for a total of one hundred forty-five (145) years.

(App'x at 17.)

[28] This appeal ensued.

# Discussion and Decision

## Sufficiency of the Evidence

[29] Miske challenges the sufficiency of the evidence as to his convictions for Rape and Criminal Deviate Conduct, specifically directing our attention to the elevation of these offenses to Class A felonies based upon the use or threat of deadly force in committing these offenses.

[30] Our standard of review in challenges to the sufficiency of evidence is well settled. We consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess the credibility of witnesses or reweigh evidence. *Id.* We will affirm the conviction unless "no reasonable fact-finder could find the elements of the

crime proven beyond a reasonable doubt." *Id.* (quoting *Jenkins v. State*, 726 N.E.2d 268, 270 (Ind. 2000)). "The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict." *Id.* at 147 (quoting *Pickens v. State*, 751 N.E.2d 331, 334 (Ind. Ct. App. 2001)).

[31] To convict Miske of Rape, as charged, the State was required to prove beyond a reasonable doubt that Miske knowingly or intentionally had sexual intercourse with V.P., when V.P. was compelled by force or imminent threat of force, and where Miske committed the offense using or threatening to use deadly force. I.C. §§ 35-42-4-1(a) & (b)(1); App'x at 18. To convict Miske of two counts of Criminal Deviate Conduct, as charged, the State was required to prove that Miske knowingly or intentionally caused V.P. to submit to deviate sexual conduct—once involving his penis and V.P.'s mouth, and once involving his penis and V.P.'s anus—when V.P. was compelled by force or imminent threat of force, and where Miske committed the offense using or threatening to use deadly force. I.C. §§ 35-42-4-2(a) & (b)(1); App'x at 19-20.

[32] "Deadly force," as used in the statutes for Rape and Criminal Deviate Conduct, is "force that creates a substantial risk of serious bodily injury." I.C. § 35-31.5-2-85. As used in the statutory definition for "deadly force," "serious bodily injury" is "bodily injury that creates a substantial risk of death or that causes: (1) serious permanent disfigurement; (2) unconsciousness; (3) extreme pain; (4) permanent or protracted loss or impairment of the function of a bodily member or organ; or (5) loss of a fetus." I.C. § 35-31.5-2-292. Miske contends that there

was insufficient evidence to establish that the force he used or threatened to use against V.P. created a substantial risk of serious bodily injury.

[33] Arguing thus, Miske directs us to cases in which a defendant both verbally threatened to kill a rape victim and used force to cut off a victim's breathing. In those cases, the Indiana Supreme Court affirmed the defendants' convictions for rape involving the use or threat of deadly force. *See Harper v. State*, 474 N.E.2d 508 (Ind. 1985); *Smith v. State*, 455 N.E.2d 606 (Ind. 1983) (holding in each case sufficient evidence of threat to use deadly force where a defendant disrupted air flow while making verbal threats of harm). Miske contrasts those cases with his own, arguing that he neither used deadly force nor threatened it, and that V.P.'s subjective belief is insufficient to sustain his convictions.

[34] The evidence that favors the verdict is that Miske repeatedly strangled V.P., pulled her up by her hair and threw her around the home several times, caused V.P.'s head to hit a wall, and made V.P. submit to multiple instances of oral, vaginal, and anal sexual intercourse. V.P. was treated for bleeding from her rectum, felt pain while Miske forced her to participate in anal sexual intercourse, and complained of vaginal, rectal, and head pain at the hospital during treatment. V.P. also indicated to Miske on several occasions that she was afraid he would kill her, but Miske continued on in his abuse. Thus, while Miske is correct that there is no evidence that he expressly threatened to kill V.P., his conduct throughout the sustained abuse he imposed upon V.P. before *and after* she expressed to him her fear that he would kill her makes Miske's case akin to those he tries to distinguish away.

We conclude there was sufficient evidence from which a jury could infer that Miske's conduct caused either a substantial risk of death or extreme pain, or amounted to a threat of a substantial risk of death or extreme pain. We accordingly find no error in the jury's verdict on the convictions for Rape and Criminal Deviate Conduct, as Class A felonies.

## Double Jeopardy

Miske's appeal challenges his convictions for Criminal Confinement, Battery, and Domestic Battery as being barred under double jeopardy principles.

The Indiana Constitution provides, "No person shall be put in jeopardy twice for the same offense." Ind. Const. art. 1, sec. 14. Indiana's double jeopardy doctrines include a statutory elements test and an actual evidence test. *Williams v. State*, 889 N.E.2d 1274, 1278 (Ind. Ct. App. 2008) (citing *Davis v. State*, 770 N.E.2d 319, 323 (Ind. 2002)), *trans. denied*. Basing his contentions in the evidence adduced at trial, Miske argues that his convictions for Criminal Confinement, Battery, and Domestic Battery all are barred as a result of his conviction for Rape.

The actual evidence test bars multiple convictions "if there is 'a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.'" *Davis*, 770 N.E.2d at 323 (quoting *Richardson v. State*, 717 N.E.2d 32, 53 (Ind. 1999)). The actual evidence test is not violated—and thus, a conviction will not be vacated—if

"'the evidentiary facts establishing the essential elements of one offense also establish only one or even several, *but not all*, of the essential elements of a second offense.'" *Id.* (quoting *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002)) (emphasis in original).

[39] Directing us to these principles, Miske argues that his Criminal Confinement conviction must fail because the evidence used to convict him of Rape is the same evidence used to convict him of Criminal Confinement. Our supreme court observed in *Gates v. State* that "one who commits rape or criminal deviate conduct necessarily 'confines' the victim at least long enough to complete such a forcible crime." 759 N.E.2d 631, 632 (Ind. 2001). But "entitlement to relief depends upon whether the confinement exceeded the bounds of the force used to commit the rape and criminal deviate conduct." *Id.*

[40] Here, Miske's confining conduct clearly exceeded the force necessary to commit the rape. Miske did not simply confine V.P. long enough to thrice engage in a cycle of oral, vaginal, and anal sex. Miske dragged V.P. from the living room to the bedroom by her hair, even after V.P. told Miske that she would do whatever he wanted if he did not kill her, and Miske held onto V.P.'s hair throughout his forced sexual conduct with V.P. And all of this occurred after Miske strangled V.P. several times and pulled her off the ground by her hair on multiple occasions. This conduct "exceeded the bounds of the force used to commit the rape," *see id.*, and we accordingly find no violation of double jeopardy principles in Miske's conviction for Criminal Confinement.

Miske also argues that his convictions for Battery and Domestic Battery must fail, as well, because Battery and Domestic Battery here are lesser-included offenses associated with the commission of Rape. Again, we disagree. Miske grabbed V.P. by her hair multiple times, pulling her off the couch and the floor, throwing her back on the ground, and once struck V.P.'s head against a wall. In addition, on January 3, 2014, two days prior to the sexual assault on V.P., Miske struck V.P.'s arm and forced her to the ground, leaving bruising on the inside of V.P.'s arm. None of these acts were inherent to the commission of Rape or Criminal Deviate Conduct. We accordingly find no violation of double jeopardy principles in either the Battery or Domestic Battery convictions.

## Continuing Crime Doctrine

We turn to Miske's next issue, whether the trial court erred by contravening the continuous crime doctrine, when it convicted him of multiple offenses in a single, continuous transaction.

"The continuing crime doctrine essentially provides that actions that are sufficient in themselves to constitute separate criminal offenses may be so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Firestone v. State*, 838 N.E.2d 468, 472 (Ind. Ct. App. 2005). The doctrine "reflects a category of Indiana's prohibition against double jeopardy." *Chavez v. State*, 988 N.E.2d 1226, 1228 (Ind. Ct. App. 2013) (citations and quotation marks omitted), *trans. denied*. The

doctrine "defines those instances where a defendant's conduct amounts only to a single[,] chargeable crime," and "prevents the state from charging a defendant twice for the same continuous offense." *Id.* (citations and quotation marks omitted). Citing *Chavez* and *Firestone*, and other cases, Miske argues that all of his convictions, except for that of Resisting Law Enforcement, were for actions that were part of a continuing crime and that, as a result, "his actions should be considered as one continuous crime, with only one sentence." (Appellant's Br. at 12.)

[44]   Addressing a similar case to this one, involving charges of oral, vaginal, and anal intercourse, the Indiana Supreme Court has stated that the resolution of claims under the continuous crime doctrine "is extremely fact-sensitive and is properly resolved by determining whether the challenged offenses are the 'same offense' under the actual evidence test of the Indiana Double Jeopardy clause." *Collins v. State*, 717 N.E.2d 108, 110 (Ind. 1999). The *Collins* Court held that a single sequence of time in which a defendant forced a thirteen-year-old victim to engage in vaginal intercourse, oral intercourse, vaginal intercourse again, and then anal intercourse, there was "no reasonable possibility" that the evidentiary facts used to establish criminal deviate conduct based upon oral intercourse were the same as those used to establish criminal deviate conduct based upon anal intercourse. *Id.* at 111. The *Collins* Court accordingly affirmed the multiple convictions. *Id.*

[45]   Here, Miske thrice forced V.P. to engage in sexual, oral, and anal intercourse, and Miske was charged once each with Rape, Criminal Deviate Conduct as to

oral intercourse, and Criminal Deviate Conduct as to anal intercourse. We cannot conclude that there was a reasonable possibility that the jury relied on the same evidence to establish these separate convictions, and accordingly we leave these convictions undisturbed.

[46] We turn next to Miske's conviction for Strangulation. V.P. testified that Miske sat on her and choked her, cutting off her breathing, several times during the early morning hours of January 5, 2014, and these acts were distinguishable from other harms Miske imposed upon her during his offenses. For the same reason as above, then—we cannot conclude that there was a reasonable possibility the jury relied upon evidence of strangulation to establish both it and other offenses—we leave Miske's conviction for Strangulation undisturbed.

[47] Because we have already concluded that Miske's convictions for Criminal Confinement, Battery, and Domestic Battery satisfy the requirements of the actual evidence test, we leave these convictions undisturbed, as well.

[48] Finally, we turn to Miske's conviction for Intimidation. To convict him of Intimidation, the State was required to prove beyond a reasonable doubt that Miske knowingly or intentionally communicated a threat—namely, to commit a forcible felony—to V.P., with the intent that V.P. engage in conduct against her will or be placed in fear of retaliation for a prior lawful act. I.C. 35-42-2-1; App'x at 22. Here, after he had repeatedly sexually abused V.P. and the two were on opposite ends of the bed, Miske vacillated between stating he would kill V.P. and telling V.P. she could call the police and that he would not hurt

her, but that he would not go down without a fight. It was only after Miske fell asleep that V.P. finally left the bedroom and got her phone to call police. This is separate from any evidence that Miske threatened V.P. in order to force her to engage in sexual conduct with him. Accordingly, we find no reasonable possibility that the jury relied upon other conduct by Miske in its guilty finding as to the charge of Intimidation. We thus leave this conviction undisturbed.

[49] Having found no double jeopardy concerns by application of the actual evidence test under the continuing crime doctrine, we affirm all of Miske's convictions.

# Aggravating Circumstances and Appellate Rule 7(B)

[50] We turn now to the first of Miske's two challenges to the trial court's sentencing decision.

[51] Miske argues that the trial court abused its discretion when it found certain facts as aggravating circumstances. Our supreme court has held:

> [T]he imposition of sentence and the review of sentences on appeal should proceed as follows:
>
> 1. The trial court must enter a statement including reasonably detailed reasons or circumstances for imposing a particular sentence.
>
> 2. The reasons given, and the omission of reasons arguably supported by the record, are reviewable on appeal for abuse of discretion.
>
> 3. The relative weight or value assignable to reasons properly found or those which should have been found is not subject to review for abuse.
>
> 4. Appellate review of the merits of a sentence may be sought on the grounds outlined in Appellate Rule 7(B).

*Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007).

We review sentencing decisions for an abuse of discretion. *Id.* at 490. While a trial court may abuse its discretion by issuing a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration," a trial court can no longer "be said to have abused its discretion in failing to 'properly weigh' such factors." *Id.* (quoting *Jackson v. State*, 729 N.E.2d 147, 155 (Ind. 2000); *Morgan v. State*, 675 N.E.2d 1067, 1073-74 (Ind. 1996)). Where the trial court has abused its discretion, we will not reverse a sentence if it is not inappropriate under Appellate Rule 7(B). *Felder v. State*, 870 N.E.2d 554, 558 (Ind. Ct. App. 2007) (citing *Windhorst v. State*, 868 N.E.2d 504, 507 (Ind. 2007)).

Miske challenges the trial court's oral sentencing statement and written sentencing order, which found as aggravating circumstances that Miske's "Indiana Risk Assessment Score was high," that Miske "failed to take responsibility of his crime by pleading not guilty," and the "nature and circumstances of the crime." App'x at 8-9. We address each in turn.

Turning first to the use of the Indiana Risk Assessment Score, the Indiana Supreme Court has held that such assessments "are not in the nature of, nor do they provide evidence constituting, an aggravating or mitigating circumstance," but courts are encouraged to use "evidence-based offender assessment instruments…in crafting a penal program tailored to each individual

defendant." *Malenchik v. State*, 928 N.E.2d 564, 575 (Ind. 2010). We accordingly agree with Miske that the trial court abused its discretion when it found as an aggravating circumstance his high score on the Indiana Risk Assessment.

[55] Turning next to the trial court's finding that Miske's failure to take responsibility for his offenses by entering a guilty plea was an aggravating factor, we observe that "a defendant who pleads guilty deserves to have mitigating weight extended to the guilty plea in return." *Francis v. State*, 817 N.E.2d 235, 238 (Ind. 2004). The trial court may not find as an aggravating circumstance a defendant's failure to enter a guilty plea, but that failure to show remorse may be properly found as an aggravating circumstance. *Fredrick v. State*, 755 N.E.2d 1078, 1084 (Ind. 2001). Here, the trial court's order appears not to address the question of remorse, but rather finds as an aggravating circumstance *per se* Miske's decision not to enter a guilty plea instead of proceeding to trial. We therefore agree with Miske that the trial court abused its discretion in reaching this finding.

[56] Miske also challenges the trial court's use of "the nature and circumstances of the crime" as an aggravating circumstance. "Generally, the 'nature and circumstances' of a crime is a proper aggravating circumstance." *McCann v. State*, 749 N.E.2d 1116, 1120 (Ind. 2001). In its oral sentencing statement, the trial court specified as its basis for the use of this aggravating circumstance "the damage and loss to the victim which exceeds the elements required for the convictions." (Tr. at 376-77.) Miske contends this was not sufficiently specific.

In light of the facts adduced into evidence at trial, we disagree; a trial court's sentencing statement needs to be "reasonably detailed" and "supported by the record," *Anglemyer*, 868 N.E.2d and 491, and such is the case here.

[57] Even where a trial court abuses its discretion in finding one or more aggravating or mitigating circumstances, such abuse of discretion does not itself require overturning the sentencing order as a whole so long as the sentence is otherwise appropriate under Appellate Rule 7(B). *Felder v. State*, 870 N.E.2d at 558. We accordingly turn our attention to that question.

[58] The authority granted to this Court by Article 7, § 6 of the Indiana Constitution permitting appellate review and revision of criminal sentences is implemented through Appellate Rule 7(B), which provides: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, and as interpreted by case law, appellate courts may revise sentences after due consideration of the trial court's decision, if the sentence is found to be inappropriate in light of the nature of the offense and the character of the offender. *Cardwell v. State*, 895 N.E.2d 1219, 1222-25 (Ind. 2008); *Serino v. State*, 798 N.E.2d 852, 856-57 (Ind. 2003). The principal role of such review is to attempt to leaven the outliers. *Cardwell*, 895 N.E.2d at 1225.

[59] Miske was convicted of nine separate offenses:

- One count of Rape and two counts of Criminal Deviate Conduct, each as a Class A felony: each offense carried a sentencing range running from twenty to fifty years imprisonment, with an advisory term of thirty years. I.C. § 35-50-2-4(a). Miske was sentenced to forty-five years imprisonment for each of his three offenses.
- Criminal Confinement, as a Class C felony: sentencing range running from two to eight years imprisonment, with an advisory term of four years. I.C. § 35-50-2-6(a). Miske was sentenced to six years imprisonment.
- Intimidation, Strangulation, and Domestic Battery, each as a Class D felony: each offense carried a sentencing range running from six months to three years imprisonment, with an advisory term of eighteen months. I.C. § 35-50-2-7(a). Miske was sentenced to two years imprisonment for each of his three offenses.
- Battery and Resisting Law Enforcement, each as a Class A misdemeanor: each offense carried a sentencing range of up to one year imprisonment. I.C. § 35-50-3-2. Miske was sentenced to one year imprisonment for each of his two offenses.

[60] Running the sentences consecutively to one another, as limited by statutory provisions, the trial court sentenced Miske to an aggregate term of imprisonment of 145 years.

[61] Turning first to the nature of Miske's offenses, the evidence at trial that favors the judgment is that after arriving home intoxicated, Miske repeatedly strangled, battered, raped, sodomized, and forced V.P. to perform oral sex upon him. V.P. suffered injuries to her neck, face, arm, vagina, and rectum, and V.P. suffered hair loss as a result of Miske picking her up and dragging her by her hair. Some of this conduct occurred in the sight of one of V.P.'s children, and two of her children overheard the entire episode—including listening to their mother begging Miske not to kill her. After intimidating V.P. into not calling

police, he later said she could do so, but indicated he would not be arrested easily; he was not, and three police officers were required to subdue him.

[62] In her victim's impact statement, V.P. indicated that Miske's offenses, which were witnessed or overheard by two of her children, had negatively affected her children and herself. One child began displaying extraordinarily violent behavior in daycare settings after the incident. V.P. continued to cope with anxiety, humiliation, sleeplessness, and feeling unsafe. Miske's offenses may not be among the worst of the worst, but they are certainly exemplary and warrant sentences above the advisory terms set forth by our legislature.

[63] The trial court found as aggravating circumstances in its sentencing statement, exclusive of those we have found to be improper numerous aspects of Miske's character, including his criminal history, use of drugs and alcohol, failed prior opportunities at rehabilitation, probation violation, the presence of the minor children, and efforts to violate the no-contact order. All of these, together with the repetitive nature of Miske's brutal assault on V.P. also provides sufficient basis for the trial court to order consecutive sentences. We cannot conclude that Miske was in any way prejudiced by any claimed failure on the part of the trial court to identify one or more specific aggravating circumstances that supported consecutive sentences.

[64] Turning to Miske's character, we recognize, as did the trial court, that Miske served in the U.S. Marine Corps and remained generally well-employed as a welder. We also note Miske's difficult childhood, including placement in

facility-based foster care because of his mother's drug addictions, his mental health issues, and his role helping to support V.P.'s children and a child of his own from a prior relationship in South Carolina.

[65]  However, before, during, and after his discharge from the Marine Corps, and during his youth, Miske accumulated an extensive history of juvenile and adult criminal offenses. Beginning at age thirteen, while a minor living in Indiana, Miske was adjudicated a delinquent for acts that, if prosecuted as an adult, constituted Battery and Theft. As an adult, in 2006 and 2007, Miske was convicted of a series of misdemeanors in North Carolina, including several convictions for Assault, as well as Driving While Intoxicated and other traffic-related offenses; one of the Assault convictions was upon a woman, and a no-contact order was entered against Miske in that case.

[66]  After he returned to Indiana, Miske was convicted of Strangulation and Public Intoxication. Upon being convicted of Strangulation, Miske was placed on probation, but violated his probation by committing the instant offenses. During the pendency of this case, Miske acted contrary to a no-contact order put into place by the trial court and attempted to make telephone contact with V.P. multiple times on May 23, 2014. Miske also had his father contact V.P. with an apparent offer to plead guilty if she allowed Miske to say goodbye to the children. Miske also illegally used alcohol and drugs, including underage drinking and engaging in marijuana use; he admitted to the latter of these during trial in this case, and tested positive for marijuana use during the pendency of prior criminal proceedings.

Miske's offenses here were horrendous, and reflect his bad character. In that light, we cannot conclude that his sentence was inappropriate.

# Conclusion

The State adduced sufficient evidence at trial to sustain Miske's convictions for Rape and Criminal Deviate Conduct, as Class A felonies. None of his convictions are barred on double jeopardy grounds under the actual evidence test, or under the continuing crime doctrine. While the trial court abused its discretion in finding certain aggravating circumstances, we cannot conclude that the trial court's sentence was inappropriate. We accordingly affirm the trial court in all respects.

Affirmed.

Barnes, J., concurs.

Riley, J., concurs in part and dissents in part with separate opinion.

| | |
|---|---|
| James Miske, Jr.,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | Court of Appeals Case No.<br>79A02-1409-CR-619 |

**Riley, Judge, concurring in part and dissenting in part.**

[70] Although I concur with the majority's conclusions regarding the sufficiency of the evidence, double jeopardy/the continuing crime doctrine, and the aggravating sentencing factors, I must respectfully dissent from the majority's decision to affirm Miske's 145-year sentence. Pursuant to Indiana Appellate Rule 7(B), I would exercise the authority of this court to revise Miske's sentence to an aggregate term of fifty-five years, fully executed in the Department of Correction.

[71] It is clear from the record that the nature of Miske's offense was nothing short of deplorable. He drunkenly battered, strangled, raped, sodomized, and coerced fellatio from his fiancée. Additionally, Miske made V.P. fear for her life, he inflicted physical injuries to her (and likely caused emotional damage to the children who were present in the home), and he fought with the arresting

police officers. As the majority found, these and other circumstances undoubtedly warrant an aggravated sentence. Nevertheless, it is also apparent from the record that the charges of Class A felony rape and two counts of Class A felony criminal deviate conduct arose from a single episode of criminal conduct.

[72] An "episode of criminal conduct" is defined as "offenses or a connected series of offenses that are closely related in time, place, and circumstance." Ind. Code § 35-50-1-2(b) (2013). To determine "whether multiple offenses constitute an episode of criminal conduct, the focus is on the timing of the offenses and the simultaneous and contemporaneous nature, if any, of the crimes." *Slone v. State*, 11 N.E.3d 969, 972 (Ind. Ct. App. 2014). Here, the nature of the offense is that the oral sex, vaginal sex, and anal sex—although distinctly chargeable crimes—all occurred as part of one continuous act, at the end of which, Miske ejaculated and did not further engage in any sexual conduct with V.P. *See id.* (considering whether the burglaries were "continuous"). Although the trial court had the discretion to order consecutive sentences, I find that it is more appropriate based on the continuous nature of these offenses that the sentences should be served concurrently.[10]

---

[10] For non-violent crimes, the trial court is limited in its imposition of consecutive sentences: "the total of the consecutive terms of imprisonment for felony convictions arising out of an episode of criminal conduct shall not exceed the advisory sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted." I.C. § 35-50-1-2(c) (2013). In this case, because the offenses of rape and criminal deviate conduct are defined as "crime[s] of violence," the trial court was free to order consecutive sentences. I.C. § 35-50-1-2(a)(8)-(9) (2013).

[73] As to the character of the offender, I agree with the majority that Miske exhibits very few redeeming qualities to merit appellate sentence revision. Nonetheless, I find the fact that Miske served our country in the United States Marine Corps and received an honorable discharge supports the revised sentence. In light of the continuous nature of the rape and the criminal deviate conduct, along with Miske's military service, I would remand with instructions for the trial court to order that Miske's forty-five-year sentences on each of his three Class A felonies be served concurrently, with the ten-year cap on the remaining charges to be served consecutively thereto, resulting in an aggregate sentence of fifty-five years. In all other respects, I would affirm the trial court.